Philip N. Rolbin v. Commissioner.
Rolbin v. Commissioner
Docket No. 4004-68.
United States Tax Court
T.C. Memo 1970-186; 1970 Tax Ct. Memo LEXIS 175; 29 T.C.M. (CCH) 848; T.C.M. (RIA) 70186; June 30, 1970, Filed *175 The petitioner accepted a position as a chemical engineer in Newburgh, New York, intending to stay about a year. Because of unexpected difficulties in completing the work, the job lasted 20 months. During that period, he traveled most weekends to the Boston, 8on, Massachusetts, area, where he and his wife maintained a residence, and he contributed substantial services to a business operated there by his wife. Held, under the circumstances, the petitioner's employment in Newburgh was temporary, and amounts spent for lodging there are deductible under sec. 162(a)(2), I.R.C. 1954 However, the expenditures for weekend travel were not properly substantiated under sec. 274(d), I.R.C. 1954, and the regulations thereunder. Philip N. Rolbin, pro se, 65 Babcock St., Brookline, Mass. JoelGerber, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined deficiencies in the income tax of the petitioner, Philip N. Rolbin, and his wife, Florence E. Rolbin, of $997.85 for 1964 and $978.90 for 1965. The issue for decision is whether the petitioner's expenditures for travel and lodging are deductible as amounts paid while away from home in the pursuit of a trade or business under section 162(a) (2) of the Internal Revenue Code of 1954. [1] The answer depends in part on where the petitioner's "home" for tax purposes was located during the time *177 that he worked for the Ruberoid Company in Newburgh, New York. In addition, we must determine to what extent the petitioner has met the test of substantiation under section 274(d) with respect to his expenditures for travel. Findings of Fact Some of the facts have been stipulated, and those facts are so found. For the taxable years 1964 and 1965, Philip N. Rolbin and Florence E. Rolbin filed joint Federal income tax returns, using the cash method of accounting, with the district director of internal revenue, Boston, Massachusetts. In his notice of deficiency, the respondent determined that both Mr. and Mrs. Rolbin were liable for the deficiency. However, only Mr. Rolbin has filed a petition with this Court. At the time he filed such petition, his residence was in Brookline, Massachusetts. The petitioner was employed as a chemical engineer in the flooring tile division of the B.F. Goodrich Company in the Boston area for about 15 years ending in January 1964, when Goodrich sold that portion of its business and terminated the petitioner's position. Late in 1963, when Goodrich's plans had become known, *178 the technical director of the Ruberoid Company contacted the petitioner with respect to employment as a chemical engineer in that company's floor tile operation. The petitioner accepted such employment with Ruberoid, starting in February 1964, as a "Manager of Process Control and Cost Analysis." Ruberoid wanted the petitioner to improve and rewrite the chemical compound used to blend the ingredients for commercial flooring tile and to upgrade the equipment used in production. The Ruberoid job required the petitioner to work in Newburgh, New York, and although he was reluctant to leave the Boston area, where he had been living for some years, Ruberoid "made it attractive * * * with additional moneys." Nothing was said, either orally or in writing, about how long the Ruberoid employment would last. The petitioner never had a contract of employment with Ruberoid. However, when he accepted the job, the petitioner and his wife both intended that it would be temporary, thinking that it would last about a year. In fact, because of unexpected complexities that developed with respect to the operation of a new plant, it lasted 20 months. The job ended in October 1965, when Ruberoid notified *179 the petitioner that the assignment was completed and his services were no longer needed. The petitioner then returned to the Boston area. In 1966, the petitioner obtained a job with the Firestone Rubber Company, selling rubber and plastic products, which employment he still held at the time of trial, October 1969. When he first began to work for Ruberoid in Newburgh, the petitioner stayed at motels during the workweek. Shortly thereafter, in April 1964, the petitioner took a 1-year lease on a small furnished apartment in Newburgh. At the end of the duration of the lease, he attempted to become a tenant-at-will without a lease, but the apartment management required him to commit himself to an additional year's renewal of the lease. When he left Newburgh, at the end of his employment with Ruberoid, he made a settlement with the landlord with respect to the remaining portion of the lease. For rental of the 850 apartment in Newburgh, the petitioner expended $1,125 in 1964 and $1,375 in 1965. During all of 1964 and 1965, the petitioner and his wife continued to maintain their residence in Brookline, Massachusetts, where they had lived since at least 1961. Mrs. Rolbin has been *180 a licensed hairdresser since 1952. In January 1962, a hairdressing salon named "Florence Coiffures" was established in Boston. The application for registration of the shop submitted to the Massachusetts Board of Registration of Hairdressers listed Mrs. Rolbin as the sole owner of the shop. In July 1965, the business was incorporated under the name of "Florence Coiffures, Inc.," and 100 shares of stock were issued to the petitioner and his wife as joint tenants with right of survivorship. Mrs. Rolbin was designated as the president of the corporation and the petitioner as the treasurer. Florence Coiffures was started with capital contributed by the petitioner and his wife, most of which was borrowed by them. Initially, two licensed hairdressers, including Mrs. Rolbin, worked in the business. During 1964 and 1965, the shop had three, four, or five employees. Mrs. Rolbin drew no salary as such for her work in the beauty shop, and as an owner, received no tips; her primary motivation for working in the shop was the long-range hope of building up the business. Schedule C of the Rolbins' tax returns showed the net income of the hairdressing salon as $4,313.72 in 1963, $1,530.35 in 1964, *181 and $497.71 in 1965. The salon ultimately went out of business in late 1968 or early 1969. Although the petitioner never worked as a hairdresser, he did take a substantial active part in the organization and management of the business. From its inception, he devoted 15 to 20 hours per week performing services for it. He handled all of the financial affairs of the business; his wife was not qualified to do such work. He dealt with certain outside parties on behalf of the business. The lease for the two-room suite in which the business was operated was signed by both the petitioner and his wife, although it named only Mrs. Rolbin as lessee. He was authorized to, and sometimes did, sign checks drawn on business account to pay for expenses incurred by the business. Like his wife, the petitioner hoped that the hairdressing salon could eventually be built up into a business that would provide a secure source of income for them over a long-range period and free the petitioner from the uncertainties connected with working for a large corporation. During the time when he worked in Newburgh, the petitioner generally traveled to the Boston area for the weekend. His usual procedure was to *182 drive early Friday evening from Newburgh to the New York City airport, park his car there, and fly to Boston; he returned to Newburgh Sunday night or early Monday morning. During each such weekend, the petitioner spent about 15 hours performing services for Florence Coiffures. These functions included preparing and checking financial records, such as bank deposits, bank account balances, payroll accounts, and tax forms; checking inventory; and overseeing the maintenance of the shop and its equipment. He was responsible also for certain internal policies of the business. By the introduction into evidence of 15 checks, the petitioner showed that he expended $262.51 for air travel during 1965. Of these checks, six were in the amount of $14.00, one in the amount of $14.15, five in the amount of $16.00, two in the amount of $28.00, and one in the amount of $28.36. The Ruberoid Company paid the petitioner $14,256.46 in 1964, and $15,651.33 in 1965. Opinion We must decide whether or not the petitioner is entitled to deduct the amounts which he spent in 1964 and 1965 for rental of an apartment in Newburgh, New York, and the amounts which he claims to have spent for airplane travel *183 on weekends between Newburgh and Boston and for the parking of his car at the New York airport during such weekends. Section 162(a)(2) allows a taxpayer to deduct ordinary and necessary traveling expenses, including amounts expended for lodging, paid or incurred while away from home in the pursuit of a trade or business. To determine whether an expense was paid or incurred while away from home, we must first determine the situs of the petitioner's "home" within the meaning of the statute. Generally, a taxpayer is expected to maintain his home in the vicinity of his principal place of employment. Emil J. Michaels, 53 T.C. 269, 273 (1969); Rendell Owens, 50 T.C. 577, 580 (1968); Ronald D. Kroll, 49 T.C. 557, 561-562 (1968); Floyd 851 Garlock, 34 T.C. 611, 614 (1960); Mort L. Bixler, 5 B.T.A. 1181, 1184 (1927). If a taxpayer chooses, for personal reasons, to reside far from his place of employment, the expenses of traveling to it are not deductible; rather, they are personal expenses nondeductible under section 262. Commissioner v. Flowers, 326 U.S. 465 (1946), rehearing denied 326 U.S. 812 (1946). *184 A well recognized exception to this rule, however, occurs when a taxpayer travels to a new locality to take employment which is "temporary," as distinguished from "indefinite." Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958), affg. 254 F. 2d 483 (C.A. 4, 1957), rehearing denied 358 U.S. 913 (1958); Emil J. Michaels, supra; Ronald D. Kroll, supra at 562-563; Laurence P. Dowd, 37 T.C. 399 (1961); Floyd Garlock, supra. Temporary employment is "the sort of employment in which termination within a short period could be foreseen." Beatrice H. Albert, 13 T.C. 129, 131 (1949). When a taxpayer who has an established "home" for tax purposes in one place goes to a different locality to accept temporary employment, his "home" for tax purposes is not shifted to the site of such employment. He is then entitled to deduct the costs of his traveling to the place of temporary employment and of his maintaining an additional lodging there. These additional expenses are not considered personal because they were incurred for business reasons, and the taxpayer could not reasonably be expected to move his home to *185 the vicinity of his temporary employment. Ronald D. Kroll, supra. The respondent takes the position that the petitioner's employment with Ruberoid was indefinite or permanent in nature, and that his tax home was therefore in Newburgh, New York, for the duration of that job. The petitioner has the burden of proof with respect to his own contention that the Ruberoid job was temporary and that his tax home remained in Brookline, Massachusetts, during that period. Welch v. Helvering, 290 U.S. 111 (1933); Rule 32, Tax Court Rules of Practice.We find that the petitioner has successfully carried that burden of proof. The petitioner gave credible testimony to the effect that he intended the Ruberoid job to last for no more than a year, that he thought he could accomplish the required work within that time, and that only because of the development of unexpected complications related to the starting of a new plant did it last for 8 months longer. Although the petitioner extended the lease on his apartment for another year, when he had already been in Newburgh for a year, we are satisfied by his explanation that he had to agree to such an extension in order to *186 retain the apartment. Also, the fact that his services were terminated by Ruberoid, rather than by his resignation, is not incompatible with his testimony. On the other hand, his testimony is supported strongly by the facts that his wife continued to live in Brookline, that they continued to maintain their residence in Brookline, and that he and his wife had established the hairdressing business in Boston which they hoped would become successful and profitable. There has been a good deal of argument in the case over the nature of the petitioner's interest in the hairdressing salon, but it seems altogether clear that he had a substantial interest in the business. We are convinced that in early 1964, when the petitioner accepted the position with Ruberoid, he and his wife still had hopes of the business prospering. Even though the income from the business in the years 1964 and 1965 was less than the petitioner's compensation from Ruberoid, and even though the hairdressing business ultimately failed, those facts are not inconsistent with the petitioner's testimony as to his optimism in 1964. Accordingly, we have concluded that when the petitioner accepted the position with Ruberoid, he *187 expected it to last for only a year and expected to return to Brookline thereafter. This case is analogous to Laurence P. Dowd, supra, and Emil J. Michaels, supra. In Dowd, the taxpayer, who accepted a Fulbright grant to lecture in Japan, expected to be there for 10 months, but his stay was extended to 21 months. We held that he was in Japan temporarily and that his tax home remained in the United States. In Michaels, the taxpayer, who had lived in the vicinity of Seattle, agreed to take a position in Los Angeles, which he expected to last for a year, but before the end of the year, it was decided that he should remain in Los Angeles permanently. We held that during the first year, the taxpayer was in Los Angeles temporarily. In both these cases, the initial assignment was found to be temporary since the taxpayer expected it to last no more than a year, and the temporary nature of the assignment was 852 not altered by the fact that the taxpayer ultimately remained longer. In view of our conclusion with respect to the petitioner's expectation, we hold that his stay in Newburgh was temporary. This case is distinguishable from our recent decision in Walter P. Stricker, 54 T.C. 355 (1970), *188 on appeal (C.A. 6, May 25, 1970), in which we concluded that an assignment had become permanent after it had been renewed on several occasions, the last extension to continue for more than a year. From our holding that the petitioner's Ruberoid employment was temporary, it follows that his tax home remained in Brookline, Massachusetts, and that he was "away from home" while in Newburgh. His activities there were clearly undertaken in the pursuit of his "trade or business" as a chemical engineer with expertise in the flooring tile field. It is stipulated that the petitioner expended $1,125 in 1964 and $1,375 in 1965 for rental of his apartment in Newburgh, and we hold that he is entitled to deductions in those amounts. The other deductions claimed by the petitioner are for amounts which he says he spent for weekend traveling between Newburgh and Boston. The petitioner claims total deductions of $1,455.50 for 1964 and $1,677.50 for 1965, [2] representing his air fare and the cost of parking his car at the airport. The fact that his tax home remained in Massachusetts does not entitle him to these deductions for weekend travel. He must show that the weekend travel expenses were incurred *189 in pursuit of a trade or business in order to deduct them. His work for Ruberoid did not require such travel. He must show that he was engaged in an additiontl "trade or business" with respect to the hairdressing salon, and that it required his presence in Boston on weekends. However, we need not reach this question, for we find that he has not met the test of substantiation set forth by section 274(d) and the regulations thereunder with respect to any of the claimed expenses of weekend travel. Section 274(d) provides, inter alia, that no deduction for traveling expenses shall be allowed under section 162 unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement the amount of the expense and the time, place, and business purpose of the travel. The Secretary or his delegate is authorized to waive such requirements in certain circumstances. Section 1.274-5(a), Income Tax Regs., provides that expenditures *190 for travel, etc., can no longer be approximated under the doctrine of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), which permitted a court to make an approximation when it believed that a taxpayer had incurred some deductible expenses but could not determine the exact amount. See William F. Sanford, 50 T.C. 822, 827-828 (1968), affd. per curiam 412 F. 2d 201 (C.A. 2, 1969), cert. denied 396 U.S. 841 (1969). Paragraph (b)(2) of section 1.274-5, Income Tax Regs., provides that in the case of an expenditure for travel, the elements thereof which must be proved include the amount of each separate expenditure and the dates of departure and return for each trip away from home. Paragraph (c)(2)(i) of such section requires a taxpayer to substantiate an expenditure by maintaining adequate records and documentary proof of the specific information. However, paragraph (c)(2)(iii) makes an exception with respect to the maintenance of documentary evidence; such documentary evidence is not required in connection with an expenditure of less than $25 (other than for lodging) or in connection with an expenditure for transportation when such *191 evidence is not readily available. These recordkeeping requirements have been upheld by us in William F. Sanford, supra. The petitioner gives us meager information with respect to the details of his expenditures. He does not tell us, even by his unsupported testimony, any of the dates on which he traveled. He testified to having made the trip on 41 weekends in 1964, but this does not account for all the weekends in the year after he started working in Newburgh. He did not testify as to how many weekends he traveled in 1965. Sometimes he returned to Newburgh on Sunday; sometimes on Monday. The record does not show that he kept a diary or log book of his expenses. Compare Culwell v. Coard, an unreported case ( D.N.M. 1967, 19 A.F.T.R. 2d 1697, 67-2 USTC 9508). 853 He testified that the cost of roundtrip air fare between Boston and New York was $28 in 1964 and "a dollar or two" higher in 1965, and that airport parking cost $7.50 per weekend in 1964. However, he introduced no receipts into evidence. He presented 15 checks evidencing a total sum of $262.51 paid to various airlines in 1965, but did not explain which day's traveling was represented by which *192 check. In fact, the dates and amounts of some of the checks do not coincide with weekend travel. Even if the petitioner is not required to produce documentary evidence supporting his expenditures, he has still failed to substantiate such expenditures in accordance with section 274(d) and the regulations thereunder. He has failed to prove, with any specificity, most of the amounts which he claims to have spent for air travel and parking, and all the dates of such travel and parking. Compare Brown v. United States, 280 F. Supp. 854, 856 (D.N.M. 1967). He kept no contemporaneous record setting forth such information, and he has even failed to provide it in his testimony. Under these circumstances, it is clear that section 274(d) is applicable, and he is not entitled to any deductions with respect to his claims for air travel and parking. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. The petitioner testified that he spent $1,677.50 in 1965 for air fare and airport parking, but in his income tax return and his memorandum brief, this figure is given as $1,704.00. There is no explanation of this discrepancy.↩