TRUMAN C. TUCKER AND BIRDIE JO TUCKER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4881-69. Filed February 23, 1971.

Truman C. Tucker, pro se.
*John B. Harper*, for the respondent.

SIMPSON, *Judge:* The respondent determined a deficiency of $364.45 in the income tax of the petitioners for 1967. The issue for decision is whether one of the petitioners was away from home for tax purposes during parts of the taxable year in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Truman C. Tucker and Birdie Jo Tucker, filed a joint Federal income tax return for 1967 with the district director of internal revenue, Nashville, Tenn. They maintained their residence in Knoxville, Tenn., when the petition was filed in this case. Mr. Tucker will be referred to as the petitioner.

The petitioner and his family moved to a small farm in the vicinity of Knoxville, Tenn., in late 1965. He worked as an insurance salesman in the Knoxville area until March 1966. At that time, he enrolled as a student in Tennessee Wesleyan College in Athens, Tenn., where he had studied previously. The college was located about 65 miles from the farm, and while he was a student, he lived in a house that he owned near the college, although his wife and child remained at the farm near Knoxville.

The petitioner graduated in the summer of 1966, with a major in business administration and a minor in education. He desired to be a teacher, and during the summer of 1966, he inquired in and around the Knoxville area as to the availability of teaching positions, but could find none. Through a notice at Tennessee Wesleyan College, he learned of an available teaching position in Trenton, Ga., with the school

system of Dade County, beginning in August 1966. The position required 9 months and 2 weeks of teaching. Because the petitioner believed that he could not find work in the Knoxville area for that school year, he applied for and obtained the position. He went to Dade County with the intent to hold that position no longer than 1 school year. From August 1966 until June 1967, the petitioner taught in the school system of Dade County, and lived in the area of Trenton. His wife and child remained during that entire time at their farm near Knoxville, Tenn. The child attended school in the Knoxville area, and Mrs. Tucker was employed at the University of Tennessee in Knoxville where she had worked continuously since 1965.

In April 1967, the Dade County Board of Education voted to rehire the petitioner for the following school year, and arranged for a renewal of his Georgia temporary teaching certificates. However, the petitioner then informed the school personnel that he would not accept the position for another year because he wanted to return to the Knoxville area.

The petitioner spent the summer of 1967 at his farm. He did not hold a job during that summer, but did some work around his farm, including digging a pond. He made substantial efforts to find a position as a teacher in Knoxville, in Knox County, and in surrounding cities and counties located in proximity to his farm; but those efforts were unsuccessful.

In August 1967, when the petitioner traveled to North Carolina to pay taxes on another farm that he owned there, he learned that there was an available teaching position in Murphy, N.C. As it was getting late in the summer and he needed a position, and apparently he could not obtain one in the Knoxville vicinity, he accepted the position in Murphy. This position called for 9 months and 1 week of teaching. Again, the petitioner went to the area of his employment to live, while his wife and child remained on the Tennessee farm. His wife continued to work in Knoxville.

Soon after the school year was under way, the petitioner realized that the arrangement whereby his family remained in Tennessee while he worked and lived in a distant city was unsatisfactory. The duplicate living expenses proved onerous. Therefore, he asked his employers at Murphy to release him from his contract and allow him to leave midway during the school year. He planned to leave at the Christmas vacation, but the superintendent persuaded him to stay until the school could find a replacement. A replacement was found in February 1968, and the petitioner returned to his farm near Knoxville. He has remained in the Knoxville area since then. He was unemployed except for some odd jobs from February 1968 until September 1969, when he found employment as a teacher in the Knoxville school system.

The petitioner believed that his difficulty in finding a teaching position in the Knoxville vicinity was attributable to the fact that many graduates of the University of Tennessee in Knoxville decided to stay in that area to teach, resulting in a surplus of teachers.

It is undisputed that the petitioner incurred total living expenses of $1,330 while in Georgia and North Carolina during 1967.

The petitioner's farm near Knoxville, Tenn., was not a money-making venture in 1966, 1967, or 1968. No produce or cattle were sold from the farm in those years. The 1967 tax return reports that the sole income on that farm and two others owned by the petitioners was $1,219.61 in agricultural program payments, and that the operations of those farms produced a loss of $260.41. The petitioners ceased residing on the farm in August 1968 when they moved to a house in Knoxville.

### OPINION

We must decide whether the petitioner is entitled to deduct the living expenses which he incurred in 1967 in Dade County, Ga., and Murphy, N.C., while working as a schoolteacher in those areas.

Personal living expenses are ordinarily nondeductible. Sec. 262, I.R.C. 1954.[1] However, section 162(a)(2) allows a taxpayer to deduct certain living expenses paid or incurred while away from home in the pursuit of a trade or business. Since the amount of the living expenses incurred by the petitioner is not in dispute, the deductibility of such expenses depends upon whether he was "away from home in the pursuit of a trade or business" within the meaning of section 162(a)(2) while in Georgia and North Carolina.

In *Commissioner* v. *Flowers*, 326 U.S. 465 (1946), rehearing denied 326 U.S. 812 (1946), the Supreme Court held that a taxpayer could not deduct the expenses of traveling to and living at his place of employment, except when the traveling was required by the exigencies of his employment, rather than by his "personal convenience and necessities." In that case, the taxpayer's principal place of employment was Mobile, Ala., but he continued to live in Jackson, Miss., and traveled to Mobile whenever his work required him to be there. The Court found that such travel was not required by the exigencies of his employment, but resulted from his personal choice to live in Jackson. Since his principal employment was in Mobile, he could reasonably have been expected to move there, and then such travel would have been unnecessary.

Since the *Flowers* decision, we have had a multitude of cases in which it was necessary to decide whether a taxpayer was traveling be-

---

[1] All statutory references are to the Internal Revenue Code of 1954.

cause of the exigencies of his employment, or whether the travel resulted from his personal choice as to a place to live. It has been difficult to develop precise guidelines, and the questions of whether the employment was temporary or indefinite and where the taxpayer's "home" was located for tax purposes have often been treated as factual ones. As a result of this case, we have reexamined the criteria for determining when a taxpayer should be treated as away from home and allowed to deduct his personal living expenses, and we have concluded that in this case, and in other similar cases, the taxpayer should not be treated as away from home for tax purposes.

The purpose of allowing the deduction of living expenses while a taxpayer is "away from home" is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." *Ronald D. Kroll*, 49 T.C. 557, 562 (1968). In furtherance of this purpose, when a taxpayer with a principal place of employment goes *elsewhere* to take work which is merely temporary, he may deduct the living expenses incurred at the temporary post of duty, because it would not be reasonable to expect him to move his residence under such circumstances. *Emil J. Michaels*, 53 T.C. 269 (1969) ; *Ronald D. Kroll, supra*. For this purpose, temporary employment is the type which can be expected to last for only a short period of time. *Beatrice H. Albert*, 13 T.C. 129, 131 (1949).

On the other hand, if a taxpayer chooses for personal reasons to maintain a family residence far from his principal place of employment, then his additional traveling and living expenses are incurred as a result of that personal choice, and are therefore not deductible. *Commissioner* v. *Flowers, supra; Ronald D. Kroll, supra* at 561–562; *Floyd Garlock*, 34 T.C. 611, 614 (1960) ; *Mort L. Bixler*, 5 B.T.A. 1181, 1184 (1927). Similarly, if a taxpayer accepts indefinite employment outside the vicinity in which he lives, but he does not change his family residence, the travel to his new place of employment and the additional living costs which he incurs there result, not from his employment, but from his decision not to move his residence. *Rendell Owens*, 50 T.C. 577 (1968) ; *Maurice M. Wills*, 48 T.C. 308 (1967), affd. 411 F. 2d 537 (C.A. 9, 1969). Thus, the deductibility of traveling expenses and duplicate living expenses depends upon the ultimate question of whether the taxpayer, under all the circumstances, could reasonably have been expected to move his residence to the vicinity of his employment.

When the appropriate criteria are applied to the circumstances of this case, we find that the petitioner was not away from home in the pursuit of his trade or business within the meaning of section 162(a)(2) while in Georgia and North Carolina.

During the entire time with which we are concerned, the petitioner had no business connection with the Knoxville area. Although he had worked there briefly as an insurance salesman, he gave up that occupation in early 1966 when he returned to college.

Furthermore, at the time the petitioner sought the teaching jobs, he had no indication of when, if ever, he could obtain the type of position he wanted in the Knoxville area, in light of (1) the apparent plentiful supply of teachers there, and (2) the total lack of available teaching positions anywhere in the area as revealed by the petitioner's diligent search. By any reasonable standard, the prospects of employment in that area must have seemed bleak, or at best, unpromising; yet, the petitioner chose to keep his family residence there for reasons of personal choice that were *despite*, rather than *because of*, the exigencies of his trade or business.

The petitioner argues that he should receive the benefit of the exception carved out of the tax-home rule to accommodate taxpayers with temporary jobs. However, this exception was intended to operate when the taxpayer's trade or business required him to travel, and when the duration of each job was such as to make it unreasonable to expect him to move his family. It seems manifestly clear, however, that the trade or business of being a schoolteacher, working for one school district and presumably in one school, is not the sort of occupation which requires the taxpayer to travel about or to maintain additional living quarters away from his established residence. Furthermore, while a job duration of 6 or 9 months might be short enough under some circumstances to merit a finding that it would be unreasonable to expect the taxpayer to move his family, we cannot reach such a conclusion here, when the taxpayer had no business ties to the area of his previously established residence, and when the prospects for employment in his chosen profession were better away from that area than in it. Indeed, when a new college graduate finds that the area where he lives offers no employment opportunities in his field, and the prospects for future employment there are poor, it seems more reasonable for him to move his family to a locale offering more opportunities, than to insist steadfastly on keeping his family in the same place while he himself goes elsewhere to work. When a taxpayer chooses the latter course, it is clearly motivated by personal reasons unrelated to his trade or business, and as such, his additional living expenses are nondeductible under section 262.

This case is distinguishable from the situations in which a taxpayer's trade or business requires him to take jobs of necessarily brief duration in disparate localities away from the area of his personal residence, and in which a taxpayer is sent temporarily to a distant locale

at the request and direction of his employer, and in which a taxpayer retains business ties in the place from whence he has come. See *Hollie T. Dean*, 54 T.C. 663 (1970); *Emil J. Michaels, supra;* and *Laurence P. Dowd*, 37 T.C. 399 (1961). In the present case, the onerous burden of duplicate living expenses is attributable to the petitioner's personal choice, which was in no way dictated by the demands of his business. See *Commissioner* v. *Flowers, supra.*

We point out that the petitioner's testimony made it amply clear that his farm was not a trade or business being conducted for profit, so that we are not faced with the situation of a taxpayer having two businesses simultaneously in different areas. Nor does the fact of the petitioner's wife's continued employment in Knoxville support the argument that Knoxville was the petitioner's "home" for tax purposes. *Ronald D. Kroll, supra* at 565; *Robert A. Coerver*, 36 T.C. 252 (1961), affirmed per curiam 297 F. 2d 837 (C.A. 3, 1962); *Arthur B. Hammond*, 20 T.C. 285 (1953), affd. 213 F. 2d 43 (C.A. 5, 1954).

Because of the petitioner's concessions on other isues,

*Decision will be entered for the respondent.*

Reviewed by the Court.

———

DRENNEN, *J.*, concurring: I think that to allow the deduction sought by petitioner would require us to go beyond permissible limits in allowing the deduction of "extra" personal living expenses, which the taxpayer incurs by his own choice and for his own benefit, under the guise of travel expenses incurred while away from home in the pursuit of a trade or business.

In the past this Court has frequently considered this issue to be a factual issue with the conclusion depending on the particular circumstances involved. In doing so, I think we have gradually extended the principles of law on which the deduction of such expenses might be allowable and have undermined the provisions of the law which disallow the deduction of personal living expenses. I am glad that Judge Simpson recognized this in this case and has taken a hard look at where those decisions were leading.

Section 262 of the Code specifically disallows the deduction of personal living expenses. There can be no question that the expenses here involved are of the type normally considered to be nondeductible personal living expenses. However, it is recognized that expenditures of this nature may be deductible if they take on the additional character of travel expenses incurred while away from home in the pursuit of a trade or business. But, it was firmly established by the Supreme Court in *Commissioner* v. *Flowers*, 326 U.S. 465 (or at least so I thought), that for expenditures of this nature to be allowable to an

employee they must be incurred "while traveling," "while away from home," and "in pursuit of business," which was said to mean "that there must be a direct connection between the expenditure and the carrying on of a trade or business of the taxpayer or his employer. Moreover, such an expenditure must be necessary or appropriate to the development or pursuit of the business or trade."

If this was an issue of first impression, I would have difficulty in recognizing that expenditures for food and lodging while teaching school for 9½ months in one location could be said to be expenses incurred "while traveling." However, I realize that the Courts have long accepted being temporarily away from home in the pursuit of a trade or business as being in a travel status for this purpose even though the taxpayer is not constantly on the move.

The second condition stated by the Supreme Court in the *Flowers* case is that the expenses must be incurred while "away from home." Petitioner argues that the expenditures are deductible as "away from home" expenses because his employment was intended to be "temporary" rather than "indefinite" or "permanent." I recognize that this test has been used when an employee is sent to a temporary post of duty by his employer, and where the nature of the employment is temporary in itself, and I agree that it is relevant under those circumstances. However, I do not believe this has been used as a criterion where the nature of the job is not temporary and where the post of duty or principal place of employment has been chosen by the employee himself rather than his employer. To allow the deduction simply because the taxpayer decides for himself that he will take a job away from home for only 9½ months or 1 school year makes a mockery out of the principle applied by this and other Courts time and again in the "away from home" cases, and which is recognized by petitioner here, that a man's home for tax purposes is considered to be in the vicinity of his principal place of employment. See cases cited in the majority opinion and the discussion and cases cited in *Commissioner* v. *Stidger*, 386 U.S. 287, but cf. *Burns* v. *Gray*, 287 F. 2d 698 (C.A. 6).

In addition, the "temporary" versus "indefinite" employment question usually arises only where work at a new place of employment would cause a *shift* from one tax home to another. See *Peurifoy* v. *Commissioner*, 358 U.S. 59, affirming per curiam 254 F. 2d 483. If we consider this taxpayer's business to be that of being a schoolteacher, no such shift occurred. Petitioner had never taught school in Knoxville or any place else before he took the teaching position in Georgia.

The third condition expressed in *Flowers* is that the expense must be incurred in pursuit of business, that there must be a direct connection

between the expenditure and the carrying on of the trade or business of the taxpayer or his employer, and that it must be necessary or appropriate to the development and pursuit of the business. Obviously the expense can be "incurred in pursuit of a business" only if there is a business to which the expenses are proximately related. Sec. 162(a). Such business may be that of an employer or the taxpayer himself, but it cannot be a business in which taxpayer merely intends, desires, or expects to engage in at some future time. Quite clearly, petitioner's meals and lodging expenses in Georgia and North Carolina were not incurred in carrying on the school districts' business, because as far as the school districts were concerned, petitioner's personal wish to return to Knoxville was not related to their business. Petitioner's personal expenses for meals and lodging were no different from those of the other teachers who moved their families to, and became residents of, the community which they served. It can be no more successfully argued in this case that petitioner's extra living expenses were incurred in the pursuit of his employer's business and were directly related to the prosecution of that business than it was in the *Flowers* case.

Thus we are left with the question whether these expenses were incurred in pursuit of, had a direct connection with the carrying on of, and were necessary or appropriate to the development and pursuit of, a trade or business of the taxpayer individually. Certainly it cannot be said that petitioner's expenditures for food and lodging were necessary or directly connected, or were beneficial, to the jobs petitioner was employed to perform. Petitioner or someone else could have performed the jobs whether they were living away from home or not. In my opinion, the only way in which these expenditures could even remotely be considered incurred in and necessary to a trade or business of the petitioner is by recognizing that petitioner's business was that of being an employee, which is a concept relied on more and more by this Court in recent years to permit the deduction of personal living expenses.

When the Supreme Court said in *Flowers* that there must be a direct connection between the expenditure and the carrying on of the trade or business of the *taxpayer*, in my opinion it was referring to a trade or business actually conducted by the taxpayer in his individual capacity rather than for someone else, and that it did not have in mind the carrying on of the business of being an employee. Otherwise, it would have discussed this concept, because certainly Flowers was as much in the business of being an employee as is petitioner here. However, while I believe this concept can lead to unwarranted and unintended results, its use may be justified if the expenses con-

sidered to be incurred in the pursuit of that business are limited to those directly related to and for the benefit of the job the taxpayer is employed to perform. But I do not believe the statutory provisions will permit the deduction of personal living expenses incurred by a taxpayer for his own convenience in order to obtain and retain a job as an employee simply because he, subjectively, considers the job to be temporary so far as he is concerned. It seems to me we would be embracing the affirmative of the above concept to reach the conclusion petitioner seeks. In my opinion, to so extend the employee-business concept distorts the purpose and meaning of section 162, makes almost meaningless, for any employee who wants to live in one place and work elsewhere, the provisions of section 262, and flies directly in the face of the conclusion reached by the Supreme Court in *Commissioner* v. *Flowers, supra.*

If we were to allow the deduction sought here, I would view it as an open invitation to any schoolteacher, retired legal stenographer (see *Virginia C. Avery*, T.C. Memo. 1970-269), or other person who wants to live one place and work at "temporary" jobs away from his residence, to claim as deductions the personal living expenses he incurs while attending his out-of-town employment. Of course, if all such deductions were allowed it would result in inequity and discrimination against those schoolteachers or fellow employees, working side by side, who live in the vicinity of their jobs and are not permitted to deduct their living expenses.

In view of the uncertainty and confusion caused by the seemingly inconsistent positions sometimes taken by the lower courts in cases involving this issue, I suggest that either the Supreme Court (which has approached it but backed off on several occasions, see *Peurifoy* and *Stidger*, both *supra*) or Congress should define more specifically what is meant by the word "home" when used in the context of travel expenses while away from home in the pursuit of a trade or business.

I agree that the deductions for petitioner's living expenses while teaching school in Georgia and North Carolina should be denied.

TIETJENS, FORRESTER, SCOTT, FEATHERSTON, and QUEALY, *JJ.*, agree with this concurring opinion.

---

HOYT, *J.*, dissenting: I disagree with the majority opinion by my brother Simpson and respectfully dissent. With due deference I should like to record my disagreement not only with the result but also with some of the legal theories advanced in the majority opinion.

We have recently confirmed that employed persons can be in the trade or business of being employees so that expenses incurred in obtaining employment are reasonable and necessary business ex-

penses *of their own business*, deductible as such. *David J. Primuth*, 54 T.C. 374 (1970); *Guy R. Motto*, 54 T.C. 558 (1970).

Here the taxpayer is a schoolteacher. He was in the trade or business of being a member of the teaching profession and began his professional career in the year prior to the year before us. See *Mary O. Furner*, 47 T.C. 165 (1966), reversed on other grounds 393 F. 2d 292 (C.A. 7, 1969).[1] The fact that Tucker was not employed as a teacher until August of 1966 would not prevent recognition of the fact that he had then commenced and was thereafter engaged in carrying on his business of being a teacher. *Furner* v. *Commissioner, supra.* Whatever ordinary and necessary expenses he incurred in carrying on that business in the following year, the year before us, should be allowed as expenses of conducting his teaching business, including traveling expenses while away from home. Sec. 162(a)(2).

*Commissioner* v. *Flowers*, 326 U.S. 465 (1946), established three tests for the allowance of away from home travel expense deductions: (1) The expense must be reasonable and a necessary traveling expense, (2) the expense must be incurred "while away from home," and (3) the expense must be incurred in pursuit of business, i.e., there must be a direct connection between the expenditure and the carrying on of the trade or business *of the taxpayer or his employer.* "The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors."

In the many intervening years since *Flowers* this Court has carved out an exception to the requirement that business exigencies must motivate the travel and has allowed deduction of traveling expenses, including meals and lodging, when a taxpayer accepts or is assigned to a "temporary" job away from home. The Supreme Court has recognized this (without approving it) and in *Peurifoy* v. *Commissioner*, 358 U.S. 59, 60 (1958), described the exception as follows:

Generally, a taxpayer is entitled to deduct unreimbursed travel expenses only when they are required by *"the exigencies of business."* * * *

*To this rule, however, the Tax Court has engrafted an exception which allows a deduction for expenditures of this type when a taxpayer's employment is "temporary" as contrasted with "indefinite" or "indeterminate."* * * *

[Emphasis added.]

This exception dictates, in a long line of cases, that if a taxpayer's "stay at the new post of business is to be temporary—'the sort of employment in which termination within a short period could be foreseen' (*Beatrice H. Albert*, 13 T.C. 129, 131 (1949))—it is not reason-

---

[1] The Court of Appeals in *Furner* recognized that educational expenses were properly deductible as ordinary and necessary business expenses in a year during which the taxpayer was neither employed as a teacher, nor on leave from a teaching position. She was still carrying on her business of being a teacher that year even under such circumstances.

able to expect him to move his residence." If he incurs living expenses at the temporary post, these are traveling expenses required by the trade or business rather than by personal choice, and they are therefore deductible. *Ronald D. Kroll, supra* at 562–563. The respondent did not quarrel with the engrafted exception in the *Peurifoy* case. See *Peurifoy* v. *Commissioner, supra* at 60. In Rev. Rul. 60–189, 1960–1 C.B. 60, he has recognized its validity. I do not believe that we should turn our backs on it here.

We have held in many cases that a salaried employee or wage earner, who *by his own choice*, accepts a temporary post away from his former home with a new employer, is entitled to deduct away-from-home traveling expenses. It has never been suggested by any of these cases that the same priciples should be applied *only* where an employee is ordered to a temporary post of duty *by his employer. Hollie T. Dean*, 54 T.C. 663 (1970); *Laurence P. Dowd*, 37 T.C. 399 (1961); *Alois Joseph Weidekamp*, 29 T.C. 16 (1957); *Harry F. Schurer*, 3 T.C. 544 (1944); *Virginia C. Avery*, T.C. Memo. 1970–269; *Philip N. Rolbin*, T.C. Memo. 1970–186; *Nat Glogowski, Jr.*, T.C. Memo. 1967–236. The sole issue to be decided here, therefore, as I see it, is whether or not the taxpayer was temporarily "away from home" in pursuit of his trade or business when he incurred the expenses in question. The majority opinion sidesteps and ducks this issue, and makes no finding with respect to the temporary, indeterminate, or indefinite nature of this petitioner's two employments in question.

As recognized by the majority opinion, the away-from-home provision is designed to mitigate the burden of the taxpayer, who because of the exigencies of *his* trade or business, must maintain two residences and thereby incur duplicate living expenses. *Ronald D. Kroll*, 49 T.C. 557 (1968), and cases cited therein. The exception allowed where a taxpayer is temporarily employed away from his home is directed toward this same end. *Harvey* v. *Commissioner*, 283 F. 2d 491 (C.A. 9, 1960), reversing on other grounds 32 T.C. 1368 (1959).

It has been recognized that the employment away from home must be temporary "in contemplation at the time of its acceptance and not indeterminate in fact as it develops." *Commissioner* v. *Peurifoy*, 254 F. 2d 483 (C.A. 4, 1957), affd. 358 U.S. 104 (1958). We have repeatedly stressed the importance of the understanding and intention of the taxpayer *at the time of the acceptance of the employment* in determining whether or not it was temporary, indefinite, or indeterminate. *Emil J. Michaels*, 53 T.C. 269 (1969); *Ronald D. Kroll, supra; Laurence P. Dowd, supra.* Certainly here Tucker contemplated, understood, and intended when he accepted each of the employments in question, that he would only remain away from his permanent home

for a known short period. He held only a temporary teaching certificate in Georgia and was a neophyte teacher, without status or tenure in Dade County, Ga., or in Murphy, N.C. He had no assurance whatever that he would be rehired by either employer for another school year. The employments in question were short-term, temporary jobs in contemplation when accepted, and never ripened into anything more.

In *Laurence P. Dowd, supra,* a college professor decided to accept a 10-month teaching job at a foreign university, under a Fulbright grant to begin in October of 1955. Accompanied by his wife and children he left the United States in late September 1955. His original 10-month grant was extended by a renewal for another 10-month period and an interim grant for part of 2 summer months. The taxpayer remained abroad with his family from October of 1955 until July of 1957, a period of 21 months, during which time he lectured at the foreign university. He rented his family home in the United States during his absence and therefore did not incur duplicate expenses for maintaining two households. We held that nevertheless his tax residence remained in the United States in 1956 and 1957 and that during the 21-month period he spent abroad "petitioner was temporarily away from home in the pursuit of his trade or profession of teaching."

In *Dowd* it was stressed that by its very nature the Fulbright grant was temporary since it was for a fixed period of 10 months, and that petitioner never intended to remain abroad indefinitely or permanently.

We concluded that he was entitled to deduct the expenses he incurred for living abroad during the entire time he was away as "traveling expenses" under section 162(a)(2) of the Code. We then allowed a deduction for those expenses in the amount of $4,800 for 1956 and $2,500 for 1957. To disallow the similar but lesser amounts claimed in the instant case by this teacher under the facts disclosed by this record is to demonstrate our capacity for inconsistency.

As recently as March 30, 1970, we allowed a deduction for away from home living expenses to a taxpayer who had not worked in the area of his residence for a number of years, but was employed in the year before us in the Washington, D.C., area on a job lasting for 6 months. For several years he obtained his jobs through his local union office in Washington, D.C., and maintained no business ties with his hometown in Maryland, 80 miles from Washington. We held the taxpayer's residence in Maryland remained his tax home where he did not have a nontemporary principal place of business away from the vicinity of the residence. *Hollie T. Dean, supra.*

Our opinion in *Dean* was generally in accord with the respondent's

own views as expressed in Rev. Rul. 60–189, *supra*, in which it is first stated that an employment of anticipated duration of a year or less will normally be regarded as of a temporary nature and then the following guidelines are announced:

For example, in the absence of clear evidence to the contrary, it is normally to be presumed from common experience that a man with a wife and children would prefer to work regularly in or near the locality where his family resides so that he may be with them during off-duty hours. That a worker has a family with a fixed residence should therefore tend to show that he takes jobs at distant points for business rather than for personal reasons. Should his case present the additional fact that there is a shortage of work in the locality where the family resides, or a shortage of sufficient work there to provide year-round employment, there would be even stronger reasons to conclude that the jobs are taken elsewhere for business rather than for personal reasons. * * *

As the majority opinion recognizes, the evidence here is convincing that petitioner preferred to work in the Knoxville area and that he sought diligently to obtain a teaching position in that area; being unable to find one there, he left his home and family in August 1966 to accept the Georgia teaching job for 9 months, fully intending to return to Knoxville and his family the following June, which he did. The following fall after his efforts to obtain a teaching job near Knoxville once more proved futile, he again made the same hard choice, dictated by the same business motives and necessity. As in the case of the prior job, he intended to stay in North Carolina for only 1 school year, 9 months. As the situation developed, however, he was unable to stick it out even that long, because of the "onerous" burden of duplicated living expenses. He returned to his home in Knoxville after only 5 months. He never intended to remain indefinitely, for an indeterminate period, or permanently in either Dade County or in Murphy, N.C. He maintained his home and family in Knoxville, where his wife continued her own gainful employment, at his fixed and established residence. Later on he obtained a teaching job in Knoxville which was what he attempted to do from the start.

In the year before us petitioner spent 3 months at home in Knoxville, and worked for 5 months in Georgia and for 4 months in North Carolina. I think the conclusion inescapable that under the rationale of many previously decided cases the petitioner's two brief employments in question were temporary and that his tax home was in Knoxville; it would be unreasonable to expect him to move his home and family to Georgia in 1966 or North Carolina in 1967; in my view his expenses away from home were occasioned by business reasons and directly related to the carrying on of his teaching profession and not by personal choice. See quoted portion of Rev. Rul. 60–189, *supra*. The claimed deductions should therefore be allowed under sec-

tion 162(a)(2) in accordance with our views expressed in earlier cases, particularly *Hollie T. Dean*, 54 T.C. 663 (1970), and *Laurence P. Dowd*, 33 T.C. 399 (1961), which the majority fails to disavow.

The majority opinion does real violence to the doctrine of stare decisis and will create doubt, confusion, and uncertainty as to the position of the Tax Court on this issue, thus inviting increased litigation. I fail to see the necessity for such *ad hoc* judicial action on the facts disclosed by the record here. See dissenting opinion of Simpson, J., *Steinhort* v. *Commissioner*, 335 F. 2d 496, 506 (C.A. 5, 1964). I would hold for the petitioner on the basis of previously decided cases and not ignore them.

RAUM and FAY, *JJ.*, agree with this dissent.