WALTER K. LIANG and CHEN Y. LIANG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Liang v. Commissioner
Docket No. 7222-72.
United States Tax Court
T.C. Memo 1975-297; 1975 Tax Ct. Memo LEXIS 76; 34 T.C.M. (CCH) 1298; T.C.M. (RIA) 750297; September 23, 1975, Filed Walter K. Liang, pro se. Brian J. Seery, *77 for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1969 in the amount of $3,237.41. The principal issues for decision are: (1) Whether petitioners are entitled to deduct certain travel expenses incurred by Walter K. Liang while away from Cranston, Rhode Island; (2) whether petitioners are entitled to deduct certain amounts allegedly paid by Chen Y. Liang for meals and sleeping quarters while serving on evening duty at a hospital; and (3) whether petitioners are entitled to deduct certain expenses incurred by Chen Y. Liang in the operation of a part-time private medical practice. FINDINGS OF FACT Petitioners, Walter K. and Chen Y. Liang, are husband and wife. At the time their petition was filed with this Court, petitioners maintained a residence at 18 Blue Ridge Road, Cranston, Rhode Island. Petitioners timely filed a joint Federal income tax return for the year 1969 with the district director of internal revenue at Providence, Rhode Island. Walter K. Liang (hereinafter referred to as Walter) immigrated to the United States in 1944 from mainland China where *78 he had worked as an accountant. After coming to the United States, he obtained a masters degree in business administration and a doctoral degree in economics from the Wharton School at the University of Pennsylvania. Walter has been employed primarily as a college professor since coming to the United States and has taught courses in accounting, economics, and management at several institutions. In 1957 he passed the Certified Public Accountant examination for the State of Michigan; however, he was not granted a certificate because he was not a United States citizen. Petitioner Chen Y. Liang (hereinafter referred to as Chen) is a medical doctor who was employed during 1969 as a fulltime resident staff physician at the General Hospital of the Rhode Island Medical Center in Howard, Rhode Island. She also conducted a part-time private medical practice in Cranston, Rhode Island. 1. Walter's Traveling Expenses
During the spring semester of 1969 (approximately from January 3 to June 10, 1969), Walter taught economics at Lowell Technological Institute in Lowell, Massachusetts. Walter had taught at that institution and had continuously resided in Lowell, except for vacation recesses *79 and occasional weekends, since September of 1966. While teaching at Lowell Institute in 1969, Walter also taught three evening courses at the University of Rhode Island, Division of University Extension, Providence, Rhode Island. In order to teach the evening courses at the University of Rhode Island, Walter would travel three nights a week from Lowell, Massachusetts to Providence, Rhode Island. During the fall semester of 1969 (approximately from September through December), Walter taught economics at Wilkes College in Wilkes-Barre, Pennsylvania. While Walter was employed at Lowell Institute in 1969, he remained in Lowell except for occasional weekend trips to visit his family in Cranston and his thrice weekly teaching trips to Providence. During the fall and winter of 1969, Walter likewise remained in Wilkes-Barre except for occasional weekend trips to Cranston. Throughout 1969 Chen and the petitioners' children resided in Cranston. Petitioners did not claim on their 1969 joint return a deduction for any amounts expended by Walter while living at Lowell, Massachusetts or Wilkes-Barre, Pennsylvania, or while traveling to and from Providence, Rhode Island. However, in their petition *80 the petitioners claimed a deduction of $3,000 for traveling expenses incurred while Walter was temporarily away from home in the pursuit of a trade or business. 2. Chen's "Hospital Maintenance" Expense
Prior to 1967, petitioners and their two children were provided housing on the premises of the General Hospital of Rhode Island. Due to hospital expansion in 1967, Chen was forced to relinquish her hospital-provided housing and thereafter the petitioners purchased and occupied a house located approximately two miles from the hospital. Chen was frequently required to remain at the hospital after normal working hours to perform overnight and weekend duty. On these occasions of extended duty, Chen took her meals at facilities located in the hospital and, when her services were not needed, she rested in a dormitory-style room at the hospital. The hospital did not provide meals and sleeping quarters for its resident physicians. Instead, each physician could determine how he or she would provide for food and rest while on duty. If a physician chose to eat his or her meals at the hospital and/or rent a separate sleeping room, the hospital charged the physician accordingly. Chen paid *81 for the food she consumed and her sleeping quarters by having the hospital deduct the sum of these charges from her paycheck. On their joint income tax return for 1969, petitioners deducted $3,000 as Chen's "hospital maintenance" which represented the expenses for food and sleeping quarters incurred by Chen while performing overnight and weekend duty. 3. Chen's Office Expenses
In addition to her full-time position at the General Hospital of Rhode Island, Chen also conducted a part-time private medical practice during 1969 in an office located at 768 Park Avenue, Cranston, Rhode Island. Her office hours were on Monday, Tuesday, and Thursday nights from 6:00 p.m. to 8:00 p.m., and on Saturday afternoons from 2:00 p.m. to 4:00 p.m. On their 1969 joint income tax return, petitioners deducted $10,830.07 in business expenses allegedly incurred by Chen in her private medical practice. In the statutory notice of deficiency issued on August 3, 1972, respondent disallowed claimed business deductions in the amount of $6,100.93. In arriving at this determination, respondent disallowed certain claimed deductions completely and others in part. In their petition the petitioners claimed *82 deductions for certain items in amounts different from those amounts reported on the return. The following chart indicates the items of office expense in dispute and compares the amounts as claimed by petitioners on their return and in their petition, and the respective amounts allowed by respondent: Allowed by
Respondent in
Reported
Claimed in
Statutory
on Return
Petition
Notice
Depreciation
$ 700.00
$ 733.00
$ 32.00
Drugs and Medicine
968.64
1,210.37
138.50 [1]/
Office Maintenance
1,450.00
1,588.41
355.33
Stationery
380.00
137.27
0
Car Expenses
3,069.34
3,069.34
500.00
Bad Debt
150.00
150.00
0 [2]/
Cab Fares
0
181.50
0
Professional Meetings
470.00
181.02
61.02
Total
$7,187.98
$7,250.91
$1,086.85
The deduction for depreciation (other than automobile depreciation) was for the straight line depreciation of office furniture and equipment which Chen allegedly acquired in 1965 at a total price of $3,600.00. *83 Prior to 1969, petitioners had reported depreciation of $700 per year based on a five-year useful life of the equipment and furniture. Petitioners deducted amounts allegedly expended for drugs and other medicines which Chen administered in her office or dispensed to her patients. The deduction for Chen's "office maintenance" included the following alleged expenses: Receptionist
$800.00
Office cleaning
300.00
Electricity
51.98
Insurance
110.00
Property Tax
294.43
Magazines and flowers, etc.
32.00
The amounts deducted for stationery included alleged expenditures for paper, envelopes and stamps, as well as paper tissues and sanitary supplies. It also included amounts allegedly spent to purchase coffee, cookies, crackers and soft drinks for the benefit of patients and Chen's receptionist. The deduction claimed by petitioners for automobile expenses was comprised of the following expenses allegedly incurred by Chen in the use of two automobiles for business purposes: Insurance, AAA, registry
$797.50
Tires and repairs
791.91
Gasoline and oil
579.93
Depreciation
900.00 Included in the amount for "tires and repairs" was the purchase *84 price of an automobile air conditioner which was installed in one of the two vehicles. Additionally, petitioners claimed in their petition a deduction of $181.50 for cab fares allegedly incurred by Chen in making house calls. This amount did not appear on petitioners' joint income tax return. Finally, petitioners claimed deductions for expenses allegedly incurred by Chen in attending meetings, seminars, and conventions conducted by the American Medical Association and the American Academy of Family Physicians. OPINION 1. Walter's Travel Expenses
Petitioners alleged in their petition that a $3,000 deduction should be allowed for traveling expenses incurred by Walter while temporarily away from home in pursuit of a trade or business. Walter's only evidence as to the amount of these expenses was his unsubstantiated "estimate" that he incurred expenses of $250 a month. [1]/ Section 162(a), Internal Revenue Code of 1954, [2]/ provides for a deduction of "all the ordinary and necessary expenses paid or incurred during the *85 taxable year in carrying on any trade or business, including * * * traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business." Section 274(d) provides, in part, that "no deduction shall be allowed under section 162 * * * for any traveling expense (including meals and lodging while away from home) * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * * [and] (B) the time and place of the travel * * *." The regulations under section 274(d) set forth detailed rules for the substantiation of travel expenses. In this proceeding Walter failed not only to produce "adequate records" as that term is used in the statute, he failed to produce any records or corroborating evidence to substantiate his claimed travel expenses. Furthermore, petitioner was unable even in his testimony to provide the specific amount of any expense such as his meals and lodging. *86 Walter's self-serving statements as to the "estimated" amount of his expenses are clearly inadequate to sustain petitioner's burden of proof. Cf. William F. Sanford,50 T.C. 823 (1968), affd. per curiam, 412 F. 2d 201 (C.A. 2, 1969). Further, even if Walter had substantiated his expenses, it is clear that he is not entitled to a deduction for the cost of his meals and lodging in Lowell during 1969. A taxpayer is entitled to deduct travel expenses when he assumes "temporary" employment away from his tax home. Peurifoy v. Commissioner,358 U.S. 59 (1958), affirming per curiam 254 F. 2d 483 (C.A. 4, 1957). Walter's employment in Lowell for two and one-half years prior to the year in issue can hardly be termed "temporary." Consequently, for purposes of section 162(a)(2), Lowell was Walter's tax home and his living expenses at that location are expressly nondeductible under section 262. See Truman C. Tucker,55 T.C. 783 (1971); Beatrice H. Albert,13 T.C. 129 (1949). Neither the fact that Walter had strong personal ties with Cranston nor Chen's employment in that locale affects this conclusion. *87 When members of a family "engage in non-temporary employment in different localities, then the locality in which each works becomes his tax home." Ronald D. Kroll,49 T.C. 557, 565 (1968); Chwalow v. Commissioner,470 F. 2d 475 (C.A. 3, 1972), affirming a Memorandum Opinion of this Court; Robert A. Coerver,36 T.C. 252 (1961), affd. per curiam 297 F. 2d 837 (C.A. 3, 1962). For the reasons set forth above we must also deny petitioners' deduction for Walter's living expenses in Wilkes-Barre. Walter failed to prove that his duties there were of a temporary nature entitling him to an "away from home" travel deduction. While Walter's travel expenses from Lowell to his secondary teaching position in Providence would ordinarily be deductible, petitioner offered no evidence as to the actual expenses incurred nor did he provide sufficient evidence to enable us to approximate his expenses under the holding of Cohan v. Commissioner,39 F. 2d 540 (C.A. 2, 1930). In the absence of such evidence, we must sustain respondent's determination on this issue. 2. Chen's "Hospital Mainteance" Expenses
Petitioners *88 seek to deduct $3,000 which, they claim, the hospital withheld from Chen's salary as payment for food and sleeping quarters made available to her on those occasions when she was required to perform overnight and weekend duty. After carefully reviewing the record, we conclude that petitioners have failed to carry their burden of proof on this issue. Rule 142, Tax Court Rules of Practice and Procedure.
Petitioners' evidence on this issue was meager. Chen did not testify nor was any documentary evidence introduced to substantiate petitioners' claim that these amounts were deducted from Chen's paycheck. The failure of petitioners to present available firsthand evidence, both testimonial and documentary, militates against their position. Wichita Terminal Elevator Co.,6 T.C. 1158, 1165 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947). The substance of Walter's testimony on this issue was simply that Chen was required to stay at the hospital during these periods of extended duty. We do not doubt this proposition, however, that fact alone does not entitle petitioners to a deduction. Based on the record before us, we hold that the rental expense was incurred *89 for the personal convenience of Chen and is not deductible under section 162. The cost of Chen's meals at the hospital is likewise not deductible. Such costs are clearly not "away from home" travel expenses within the purview of section 162(a)(2). [3]/ Even assuming that Chen was entitled to a deduction, petitioners failed to prove that they are entitled to the amount claimed. When questioned about the specific amount withheld from his wife's paycheck, Walter could only provide vague, uncertain and evasive answers. Walter later admitted that the $3,000 figure claimed as a deduction was a product of his "imagination" and "not in any sense accurate." We place no reliance on Walter's imagination and speculation, especially in view of the fact that he was away *90 from Cranston throughout 1969 when these expenses were allegedly incurred. 3. Chen's Office Expenses
On their 1969 income tax return, petitioners claimed various business deductions totaling $10,830.07 allegedly incurred by Chen in the operation of her part-time private medical practice. Respondent disallowed $6,100.93 of these claimed deductions in his statutory notice of deficiency. Petitioners asserted in their petition that all or part of the disallowed deductions should be allowed and that additional amounts were deductible. The amounts of specific items of deduction claimed in the petition did not in most instances correspond to the amounts claimed for the same items in petitioners' 1969 income tax return. Walter explained this discrepancy by stating, in substance, that the amounts appearing in the return were designed to prevent selection of petitioners' return for audit by the Internal Revenue Service while the amounts appearing on the petition were the "true" amounts of the various deductions. While respondent did raise on brief a question as to whether certain alleged expenditures were incurred for personal or business reasons, e.g., the use of two automobiles for *91 strictly business purposes, the primary thrust of his argument is that petitioners have failed to substantiate their claimed deductions beyond the amounts allowed. Chen was neither called to testify or present at the trial. Neither was her receptionist or any other associate with direct knowledge of Chen's office expenditures called to testify. Walter alone testified for petitioners. His testimony was imprecise, ambiguous and almost entirely lacking in any substantiation or cooroboration. There were several items on which Walter offered no oral testimony or documentary evidence. Moreover, he was away from Cranston throughout most of 1969 and had no personal firsthand knowledge as to the claimed expenditures. In order to support his testimony as to certain deductions, Walter offered into evidence, over respondent's objections, two documents which the Court received for "what they were worth." One document was a "cash disbursement book" allegedly kept during 1969 by Chen and her receptionist to record out-of-pocket cash expenditures made by Chen in the operation of her part-time practice. Walter testified that it was from this book that he computed Chen's office expenses when he *92 prepared petitioners' 1969 tax return. However, on cross-examination and under questioning by the Court, Walter altered his testimony as to the book several times and at the end of trial his testimony with regard to the book was entwined with so many inconsistencies that we find it unreliable and unbelievable. Moreover, our study of the book and evaluation of Walter's testimony leads us to believe that Walter himself placed all the entries in the book. We again note that neither Chen nor her receptionist were called to testify. The second document Walter introduced into evidence was a copy of a statement signed by Vitalijs Kaspari, M.D., stating that Chen had purchased equipment and office furniture from him in 1965 for a total purchase price of $3,000. [4]/ The document allocated $2,500 of the purchase price to equipment and $500 to office furniture. Walter offered this document as proof of Chen's basis in the furniture and equipment for depreciation purposes. We have carefully considered this document *93 and find that we can give it no weight. The document is not a contemporaneous business record since it was dated July 11, 1972, some seven years after the alleged sale. Without the testimony of Dr. Kaspari we cannot assume the document's authenticity nor accept as truth the matters asserted therein. Walter's testimony with regard to the document and the sale is of no assistance to the Court since he was not a party to the sale, nor does it appear that he had any direct involvement in the transaction. The fact that the petitioners had consistently deducted $700 depreciation on prior tax returns does not bar respondent from now denying the deduction for the year in controversy. Barry Meneguzzo,43 T.C. 824, 836 (1965); South Chester Tube Co.,14 T.C. 1229, 1235 (1950). Apparently respondent has denied petitioners all but $32 of their depreciation deduction based on his determination that other non-depreciable assets were transferred in the 1965 sale. Whether that fact be true, the burden is still on the petitioners to prove their entitlement to the deduction. This, we hold, they failed to do. As to the other office expense deductions claimed by *94 petitioners, we must likewise hold for respondent since petitionershave failed to prove they are entitled to more than the respondent has allowed. We have carefully examined and re-examined the record herein to assure that petitioners have been given every benefit of their "day in court." However, after setting this matter aside and returning to it for a fresh look, we find so little probative evidence that it would be impossible, even if we believed petitioners were entitled to more than the respondent has allowed, to approximate petitioners' expenses under the Cohan doctrine. Walter was advised at trial as to the necessity of presenting concrete evidence and firsthand testimony in order to satisfy his burden of proof. Whether a proper presentation of this case, perhaps with the assistance of an attorney, would have aided petitioners herein is subject to speculation. As we view it, the real problem appears to have been petitioners' failure to maintain adequate and accurate records and their dependence instead on estimates and guesswork. Precision in reporting and verification of figures cited on their return would have terminated this controversy long before it reached this *95 Court. In order that effect be given to the concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. / Respondent now concedes that a deduction of $280.04 for drugs and medicine is allowable. / All statutory references are to the Internal Revenue Code of 1954, as amended.
[2]↩ / At trial petitioners conceded that they were not entitled to a bad debt deduction.
1. /↩ Respondent did allow petitioner to deduct $570 in expenses for summer study at the University of Pennsylvania.
3. / See, George Weissfisch,T.C. Memo 1974-74. Under similar facts in Dietrich v. Commissioner,503 F. 2d 1379 (C.A. 8, 1974), affirming a Memorandum Opinion of this Court, we rejected a physician's argument that the amounts he expended for food were excludable from income under section 119. We also stated therein that such expenditures were not deductible under section 162(a)↩.
4. /↩ Walter testified that Chen purchased additional furniture and equipment at a cost of $600 during 1965. No other evidence was presented to support this testimony.