DAVID M. HUMMEL and ARNORA D. HUMMEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hummel v. Commissioner
Docket No. 6841-75.
United States Tax Court
T.C. Memo 1977-135; 1977 Tax Ct. Memo LEXIS 306; 36 T.C.M. (CCH) 573; T.C.M. (RIA) 770135; May 5, 1977, Filed David M. Hummel, pro se. Rudolf L. Jansen and Eugene M. Corbin, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $165 in petitioners' Federal income tax for the calendar year 1972. *307 Petitioners filed an amended return for that taxable year in which they claimed that they were entitled to a refund of $2,175. The deductions upon which the refund claim was based were not allowed by respondent. The sole issue before us is whether certain expenditures constituted business expenses incurred while away from home. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by reference. At the time the petition was filed, petitioners David M. Hummel (David) and Arnora D. Hummel (Arnora) resided in Terrace Park, Ohio. They filed their joint Federal income tax return for the calendar year 1972 with the district director of internal revenue, Hartford, Connecticut. On March 29, 1974, they filed an amended return for that taxable year with the Andover Service Center, Andover, Massachusetts. Procter and Gamble Productions, Inc. (hereinafter P&G Productions) is a wholly owned subsidiary of the Procter and Gamble Company (hereinafter Procter and Gamble). P&G Productions was responsible for supervising the creation and production of television commercials for products *308 manufactured by Procter and Gamble. A separate advertising agency had primary responsibility for writing the script for each commercial. From February 1, 1967, until May 1971, David was employed by P&G Productions in Cincinnati, Ohio, as a commercial production supervisor. At some point prior to July 1971, Procter and Gamble decided to conduct a test (hereinafter "Project B") in which commercials for its products would be produced by a single production company located in New York City. At that time, neither P&G Productions nor Procter and Gamble had an office in New York. The test was to last for two years. It was hoped that the test would show savings could be achieved through more efficient use of equipment and personnel and through controlling costs. David was asked to establish a production office in New York City as part of Project B. He accepted this assignment in March or April, 1971. He expected that he would remain in New York for at most two years (the duration of the test), after which time he would return to Cincinnati. From April 12, 1971, until approximately July 15, 1971, David performed preliminary work relating to the test project. This included weekly *309 trips from Cincinnati to New York City. In July 1971, David and Arnora and their children moved to the New York area and occupied a house in Stamford, Connecticut, which they leased for a period of two years beginning July 1, 1971, at a monthly rental of $650. For the duration of Project B, David lived in Stamford and commuted to New York City. Petitioner returned to Cincinnati and to his original position as commercial production supervisor at the end of the two-year test period in 1973. In 1969, petitioners had purchased a residence in Terrace Park, Ohio. They continued to own this property throughout the two-year period in which they lived in Stamford, Connecticut. At the request of Procter and Gamble, they rented the house for approximately twenty months of this two-year span, including all of calendar year 1972. The monthly rent on the Terrace Park, Ohio, home was $300. Although petitioners moved most of their personal belongings to Stamford, they left certain items in their home in Terrace Park, including garden and yard tools, clothing, books, trophies, a refrigerator, and other personal belongings. During the two-year period in which David lived in Connecticut, *310 he continued to be a registered voter in Terrace Park, Ohio, and he voted there in the 1972 election. Throughout this period, he licensed his automobile in Ohio, maintained his membership in the Terrace Park Swim Club, and continued to use an Ohio bank for some banking services (although Arnora maintained a checking account in Connecticut to pay for household expenses). It was the policy of Procter and Gamble to make certain payments to employees who were on what it classified as "temporary assignments expected to last one year or more." Among other items, the employee was reimbursed for the cost of rental housing in the area of assignment, less one half of the amount obtained by the employee from the rental of his home in the area from which he was assigned. Because Procter and Gamble reported to the Internal Revenue Service the amount so paid as compensation and deducted withholding taxes from the amount so paid to the employee, it added an additional 30-50 percent so that the employee would receive a net amount equal to the desired level of reimbursement. On their 1972 Federal income tax return, petitioners claimed a deduction of $660 for "Local Travel Expenses -- Temporary *311 Assignment Away from Home." This amount represented the expense of David's daily travel between Stamford and New York City. In their amended return, they claimed an additional deduction of $8,700, representing the expense reimbursements received in 1972 and which had been reported as income in their 1972 return. [1]
Respondent determined that New York City constituted David's home for income tax purposes for the period in which he was assigned to work there. Upon this premise, he disallowed the deduction for local travel expenses as nondeductible personal commuting expenses. He also indicated that petitioners' refund claim would be disallowed because the expenses involved were not incurred while away from home. OPINION We are faced with the question of whether David should be considered as "away from home" in pursuit of his trade or business within the meaning of section 162. [2] The cases in this area are legion, with the criteria upon which the ultimate factual issue is determined lacking in sharp decisional delineation. See Tucker v. Commissioner,55 T.C. 783, 786 (1971). In the usual case, the *312 issue is generally framed in the context of whether the employment in question was indefinite rather than temporary and involves situations where the taxpayer's family resides at a place other than where he is employed. By way of contrast, the instant case involves the question of whether a two-year assignment should be considered temporary or permanent [3] where the taxpayer moves his family to his place of employment, maintains contacts with his previous place of employment, works for the same employer (who reimburses him for certain of his living expenses during the two-year assignment), expects to return to his previous place of employment and resume his employment with the same employer, and, in fact, so returns. *313 At the outset, we note that we do not have the usual element of duplicative expenses because David had his family with him and received reimbursement from his employer for a substantial portion of his expenses while on the two-year assignment. But, while this element is often a significant decisional factor, it is not determinative. See Tucker v. Commissioner,supra at 786; Michaels v. Commissioner,53 T.C. 269, 275 (1969). [4] In our judgment, the element of family devotion exhibited herein should neither prejudice nor benefit the petitioners. [5]
*314 We also are aware of the fact that a one-year assignment has often been articulated as the dividing line between temporary and non-temporary employment, although this rule of thumb has generally been applied in situations where the issue was temporary versus indefinite rather than temporary versus permanent employment. [6] See Rev. Rul. 60-314, 1960-2 C.B. 48. See also cases collected in 44 Cornell Law Q. 270, 276 (1959), and BNA Tax Management Portfolio 26-5th, Travel and Entertainment Expenses. [7]
*315 The ultimate test to be applied in cases such as this is whether (leaving aside the fact of return) "the taxpayer, under all the circumstances, could reasonably have been expected to move his residence to the vicinity of his employment." See Tucker v. Commissioner,supra at 786.In this context, the facts that petitioners and their children actually moved, the reimbursement policy of David's employer, the rental of the houses in Stamford and Cincinnati, the maintenance of contacts with Cincinnati, and that the employment in New York involved a "test" are of minimal significance. Rather, we think that our decision herein should be posited on what we would do if David had simply taken the assignment and left his family in Cincinnati during the two-year period, expecting to return to Cincinnati at the end of that period to work for Procter and Gamble. The question thus framed is whether, under the circumstances herein, a two-year span is sufficient to justify the conclusion that David could "reasonably have been expected to move his residence." Although the issue is not free from doubt, we answer that question in the affirmative and hold for the respondent. *316 In Jones v. Commissioner,54 T.C. 734 (1970), affd. 444 F. 2d 508 (5th Cir. 1971), the taxpayer was employed in Dallas, Texas, and was granted a 3-year leave of absence by his employer to undertake further graduate study in Columbus, Ohio (which the employer financed), with the understanding that he would return to work for his employer in Dallas upon the conclusion thereof. Respondent disallowed a deduction for the living expenses of the taxpayer during the period that he and his family resided in Columbus. We sustained the disallowance, stating (54 T.C. at 740): Petitioner's agreement with Mobil called for him to remain in Columbus for 3 years, a substantial time span that can hardly be viewed as "temporary" or "of short duration." Indeed, in view of this length of time, it was reasonable to expect him to move his residence to Columbus, see Ronald D. Kroll,supra at 562, even though his domicile may have remained in Dallas. * * * [8]
And, in Michaels v. Commissioner,supra, where the factual situation was quite similar *317 to that involved herein (except that the period of assignment was one year instead of two), our rationale implies that the relative shortness of the one-year time span was the critical consideration. Obviously, the instant case falls between Jones and Michaels, but we have concluded that it is closer to Jones and that a 2-year span cannot be considered sufficiently temporary to justify allowing the deductions claimed herein. Having decided that David's home was in Stamford, we conclude that the expenditures of daily travel between Stamford and New York City are nondeductible commuting expenses. See Coombs v. Commissioner,supra;section 1.262-1(b)(5), Income Tax Regs.
Decision will be entered for the respondent. Footnotes
1. The correct total expense reimbursement is $8,625.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated. ↩
3. We reject respondent's attempt to persuade us to conclude that David had an expectation that he might remain in New York and thus to characterize David's employment in New York as indefinite. It appears that his supervisors expected that the test program would last for two years and no longer, and this was David's expectation as well. Of course, there was a possibility that the test would prove unsuccessful and that David might be assigned to New York permanently. However, such a remote possibility is not sufficient to transform an assignment of fixed duration into an indefinite one.↩
4. Bochner v. Commissioner,67 T.C. 824 (1977), does not hold otherwise. That case involved a taxpayer who moved from place to place in the course of his employment and was considered as carrying his tax home on his back. Compare Rosenspan v. United States,438 F. 2d 905↩ (2d Cir. 1971). 5. We note that, in his brief, respondent stated that he was "not contesting that the expenditures involved here were reasonable and necessary and were incurred in the pursuit of business if David M. Hummel was 'away from home'." Thus, we do not have before us any issue as to the failure of petitioner to carry his burden of proof as to what portion of the expenditures in question were attributable to him as distinguished from the other members of his family. See Jones v. Commissioner,54 T.C. 734, 739 (1970), affd. 444 F. 2d 508↩ (5th Cir. 1971).
6. It was in the context of the former situation that we stated in Norwood v. Commissioner,66 T.C. 467, 470 (1976): No single element is determinative of the ultimate factual issue of temporariness, and there are no rules of thumb, durational or otherwise. Each case turns on its own facts. [Citation omitted.] ↩
7. That the petitioners included the reimbursements in gross income and claim an offsetting deduction herein is irrelevant; the decisional test would be the same if the issue were excludability of the reimbursement, since no suggestion of "convenience to the employer" under section 119 is involved. Coombs v. Commissioner,67 T.C. 426 (1976); Stephens v. Commissioner,T.C. Memo. 1976-13; sec. 1.62-2(d), Income Tax Regs.↩
8. See also Pappas v. Commissioner,T.C. Memo. 1975-169↩.