GEORGE L. ULMER and JEANNE M. ULMER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ulmer v. Commissioner
Docket No. 11133-76.
United States Tax Court
T.C. Memo 1979-155; 1979 Tax Ct. Memo LEXIS 364; 38 T.C.M. (CCH) 683; T.C.M. (RIA) 79155; April 23, 1979, Filed *364 In Jan. 1973, P accepted a position in Missouri, but his employer promised to transfer him to his home area in California within 6 to 8 months. P was never transferred, and he remained in Missouri for 22 months until he accepted employment elsewhere late in 1974. Held, P's living expenses during 1974 were not incurred while traveling away from home and were not deductible under sec. 162(a)(2), I.R.C. 1954. George L. Ulmer and Jeanne M. Ulmer, pro se. Louis A. Boxleitner, for the respondent. *365 SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $2,326.00 in the petitioners' Federal income tax for 1974. The sole issue for decision is whether the petitioners are entitled to deduct personal living expenditures made by Mr. Ulmer while working in Missouri as traveling expenses incurred while away from home under section 162(a)(2) of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, George L. Ulmer and Jeanne M. Ulmer, are husband and wife, who resided in Arcadia, Calif., when they filed the petition herein. They filed their joint Federal income tax return for 1974 with the Internal Revenue Service. Mr. Ulmer will sometimes be referred to as the petitioner. For many years, the petitioner has worked in the construction business holding various positions for many companies. He has often served as manager of a construction project, and his responsibilities began at the *366 planning state and included the allocation of money for the project and the hiring of the required labor. He has supervised such projects from both the construction company's home office and in the field at the construction site. Although the petitioner does not have an engineering degree, he has taken engineering courses. In the 5 years preceding 1973, the petitioner held positions at various places in the United States and Canada, all far removed from his home in Arcadia, Calif. In 1968, he spent 7 to 8 months in Taft, La., on the construction of a polyethylene plant. Beginning in 1969, he worked for 12 months on the construction of a pilot plant for waste water treatment located in Deep Water, N.J. In 1971 and 1972, he spent 20 months in Alberta, Can., on the construction of a gas desulfurizing plant. In late 1972, he went to Beaumont, Tex., to work on an oil refinery addition. The petitioner never had a written employment contract with any of his employers on such assignments, but in connection with each such assignment, he could anticipate the termination date. While the petitioner was away on such assignments, his wife and son remained at their residence in Arcadia, *367 Calif., where they have lived since 1962. Arcadia is in the greater Los Angeles area. Mrs. Ulmer is a tenured school teacher in the Arcadia Unified School District and has taught there since 1965. When the petitioner returned from Texas in 1972, his employer placed him on an extended leave of absence. He then attempted to find other employment with construction firms in southern California. After contacting various companies for several weeks without any success, he was offered a management position by Bechtel Power Corporation (Bechtel) at the Davis-Bessee nuclear power plant in Port Clinton, Ohio. He went to visit the jobsite in Ohio and learned that the job would last 2 to 8 years. Such a position was unacceptable to him since it would require that his family move to Ohio and that his wife leave her job and its retirement benefits. Shortly thereafter, Bechtel offered the petitioner a position at a power plant which it was building in Crystal City, Mo., for Union Electric Company. The construction of the power plant was scheduled for 2 to 3 years. However, he was told by Bechtel that his duties would require 6 to 8 months to complete, and that if he accepted the position, *368 he would be transferred to the Bechtel office in southern California after he completed his duties in Missouri. The petitioner accepted the job with such understanding, although he never obtained anything in writing from Bechtel to this effect. The petitioner went to Missouri in January 1973. He was assigned the job of contracts manager, and after 2 months, he was also made assistant site manager, the second highest position at the construction site. Soon after he began his employment with Bechtel, the petitioner continued to pursue employment in southern California in case Bechtel did not carry out its promise to transfer him. From March through September 1973, he wrote letters to several construction companies in answer to their advertisements for construction managers or engineers. Such companies were located in Chicago, Ill., San Mateo, Calif., Paramus, N.J., and Los Angeles, Calif. Some companies did not respond at all; others responded negatively; and he received only one offer of a position-- an offer to go to Saudi Arabia, which he rejected. After the petitioner had spent 6 to 8 months working at the power plant in Crystal City, he requested the promised transfer *369 to southern California. However, Bechtel did not transfer him, and he found out that as long as he did a good job in Missouri, Bechtel would keep him there. In February 1974, the petitioner resumed his efforts to find employment in southern California. Between February and June 1974, he wrote to several construction firms and employment agencies that had advertised for construction managers or engineers. Such firms were located in Pasadena, Alhambra, Rosemead, and Los Angeles. Pasadena, Alhambra, and Rosemead are in the greater Los Angeles area and are within 10 to 15 miles of Arcadia. In March 1974, Union Electric Company announced that it would add two more units to the power plant on which the petitioner was working. Such addition would have extended the project until 1979. The petitioner talked to his wife about this new development, and they discussed the possibility of his remaining in Missouri and of the family moving and remaining there after his retirement. The company then decided not to build the addition, and he and his wife no longer considered such possibilities.The power plant at Crystal City was finally completed in March 1977. In August 1974, the petitioner *370 was offered a position by Fruin-Colnon, Inc. (Fruin-Colnon). He was told that he would be assigned to its San Francisco office and that he could go home every weekend or take work home with him so he could spend more time at home. The petitioner accepted the position with Fruin-Colnon in mid-September 1974. Bechtel offered him a raise in salary to entice him to remain in Missouri, but the petitioner could not be swayed. Bechtel then asked him to stay on until he finished a contract he was negotiating, and he agreed. He continued to work for Bechtel until the end of October 1974. After he left Missouri, Bechtel offered him a job as assistant project manager in their southern California office. The offer called for him to work there for 2 years planning a nuclear power plant expansion and then to go into the field on the project, possibly to Phoenix or to Sacramento. However, the petitioner did not accept this job with Bechtel because he felt he had made a commitment to Fruin-Colnon. The petitioner began work in San Francisco on November 1, 1974. He returned to Arcadia to visit his family on weekends during November and December 1974. The petitioner worked for Fruin-Colnon *371 until August 1977. He left the firm because it wanted him to transfer to its St. Louis Office. Although San Francisco was his principal place of employment while he worked for Fruin-Colnon, he went into the field on various projects throughout the United States and was gone for as much as 6 weeks at a time. At the time of trial, the petitioner worked for a Los Angeles firm. When the petitioner first went to work for Bechtel in Missouri, he stayed in motels for almost a year. In December 1973, he rented a trailer home on a monthly basis, and he lived in the trailer until the summar of 1974. From July 1 until late August 1974, he rented a furnished house in Crystal City, and Mrs. Ulmer joined him in Crystal City during that period. In late August 1974, he rented an unfurnished apartment in St. Louis on a month-to-month basis, and he furnished the apartment with rented furniture. St. Louis is approximately 35 miles north of Crystal City. The petitioner did not rent an apartment in Crystal City because landlords there required a 1-year lease, and he did not want to sign a year's lease. With the exception of the summer visit, the petitioner's wife and son remained in Arcadia *372 while he worked in Missouri in 1974. Throughout the period the petitioner lived in Missouri, he still voted in Arcadia and belonged to a church there. He is not a member of a labor union, nor was he assigned to his job in Missouri, or any of his previous jobs, by a union hiring hall. While the petitioner worked in Missouri, he returned to Arcadia to visit his wife and son for weekends about once a month. The petitioner did some traveling for Bechtel while he worked in Missouri. He was reimbursed for his travel expenses while he was away from Crystal City, but he was not reimbursed by Bechtel for the cost of his trips to visit his family, nor for the cost of food, lodging, and other living expenses while working in Crystal City. On their Federal income tax return for 1974, the petitioners deducted $5,917.51 as an employee business expense. Such deduction included amounts spent by the petitioner for airfare, taxicab, and airport limousine services for weekend trips from St. Louis to Los Angeles; for yard and gardening services, and for maintenance of a swimming pool, at their home in Arcadia; and for his housing, food, and other personal living expenses while in Crystal City. *373 However, for July and August 1974, such deduction included only the rent for the house in Crystal City and did not include the amounts he expended for gardening and pool maintenance services for the house in Arcadia. In his notice of deficiency, the Commissioner disallowed the deduction on the ground that the petitioner was not "away from home" within the meaning of section 162(a)(2) and that Missouri had become his tax home since his job there was for an indefinite period. OPINION The only issue for decision is whether the petitioner's living expenses while he was employed in Missouri are deductible as traveling expenses incurred while away from home.As a general rule, section 262 prohibits a taxpayer from deducting personal living expenses. [2] However, section 162(a)(2)[3] allows a taxpayer to deduct expenses for meals and lodging if they are incurred while traveling away from home.
*374 In 1946, the Supreme Court established three criteria for determining whether travel expenses are deductible: (1) The expense must be reasonable and necessary; (2) the expense must be incurred "while away from home"; and (3) the expense must be incurred in pursuit of a trade or business. Commissioner v. Flowers,326 U.S. 465, 470 (1946). The purpose of the travel expense deduction under section 162(a)(2) is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner,49 T.C. 557, 562 (1968). In furtherance of this purpose, when a taxpayer with a well established tax home accepts employment away from his home, his living expenses are deductible if such employment is temporary or of short duration because it would not be reasonable to expect him to move his home under such circumstances. Commissioner v. Peurifoy,254 F. 2d 483, 486 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958); Tucker v. Commissioner,55 T.C. 783, 786 (1971); *375 Michaels v. Commissioner,53 T.C. 269 (1969); Kroll v. Commissioner, supra.However, if the taxpayer is employed away from home for a period expected to be longer than temporary, then the law considers that he should move his home to his new place of employment. His traveling expenses are no longer deductible since his travel is not required by his business but by his personal choice to continue to live at his former residence. Commissioner v. Flowers, supra.
The petitioner maintains that his employment with Bechtel in Crystal City was temporary because he contemplated, understood, and intended when accepting the job that he would remain away from his permanent home for only a short period of time. Temporary employment is defined as the kind of employment whose termination can be foreseen within a fixed or short period of time. Albert v. Commissioner,13 T.C. 129, 131 (1949). In addition to the expected length of employment, all the facts and circumstances must be considered in deciding whether a taxpayer's employment is temporary or permanent, and "No single element is determinative of the ultimate factual issue *376 of temporariness, and there are no rules of thumb, durational or otherwise." Norwood v. Commissioner,66 T.C. 467, 470 (1976). As we stated in Tucker v. Commissioner,55 T.C. at 786: the deductibility of traveling expenses and deplicate living expenses depends upon the ultimate question of whether the taxpayer, under all the circumstances, could reasonably have been expected to move his residence to the vicinity of his employment. The Court of Appeals for the Ninth Circuit in its opinion in Harvey v. Commissioner,283 F. 2d 491, 495 (1960), revg. 32 T.C. 1368 (1959), stated: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. * * * [Emphasis in original.] Although the statement in Harvey is somewhat different than that applied by this Court, the two approaches often reach the same result. See Doyle v. Commissioner,354 F. 2d 480 (9th Cir. 1966), affg. a Memorandum Opinion of this Court; *377 Stricker v. Commissioner,54 T.C. 355 (1970), affd. 438 F. 2d 1216 (6th Cir. 1971). It is a well settled principle that employment which is originally temporary may become indefinite or permanent due to changed circumstances or simply by the passage of time. Norwood v. Commissioner,66 T.C. at 470; Kroll v. Commissioner,49 T.C. at 562; Garlock v. Commissioner,34 T.C. 611, 616 (1960). By indefinite employment we mean that employment with respect to which the taxpayer cannot anticipate the actual termination date but which he does expect to last for longer than a temporary period. See Blatnick v. Commissioner,56 T.C. 1344 (1971). After careful consideration of all the facts and circumstances, we must hold that although the petitioner's employment with Bechtel in Missouri may have been temporary when he accepted the job in January 1973, his position there had become indefinite by 1974, and that therefore, the living expenses incurred by him while employed in Missouri during 1974 are not deductible. Although Bechtel assured the petitioner when he accepted employment with it that *378 his assignment in Crystal City would last for only 6 to 8 months, the petitioner's job became indefinite once he realized that Bechtel would not transfer him to California as long as he continued to perform satisfactorily at his job in Missouri. He could have remained at his job there until the power plant was completed in 1977, if he desired, and Bechtel's attempts to persuade him to remain are evidence that they would have kept him on. McCallister v. Commissioner,70 T.C. 505, 510 (1978); see Norwood v. Commissioner,66 T.C. at 470. Thus, the petitioner "could reasonably have been expected to move his residence to the vicinity of his employment" ( Tucker v. Commissioner,55 T.C. at 786), since there was "a reasonable probability known to him that he may be employed for a long period of time at his new station" ( Harvey v. Commissioner,283 F. 2d at 495). As events developed, the petitioner worked in Missouri for 22 months, well over a year beyond his promised stay. The substantial actual duration of his job is an additional persuasive reason for concluding that his employment with Bechtel was indefinite. *379 McCallister v. Commissioner,supra at 510; Norwood v. Commissioner,supra at 471. "[It] is essential that the employment away from the established tax home shall be temporary in contemplation at the time of its acceptance and not indeterminate in fact as it develops." Commissioner v. Peurifoy,254 F. 2d at 486. Moreover, although the record shows that the petitioner maintained his residence in the Los Angeles area and repeatedly sought employment there, he was, in fact, unable to find prolonged employment in that area in past years. He is employed in an industry which often requires him to work on construction projects at various places around the country or in Canada. It appears that during the 5 years preceding his acceptance of the position in Missouri, he spent most of the time working outside the Los Angeles area. Furthermore, when he terminated his employment in Missouri, he did not return to the Los Angeles area even then; he accepted employment in San Francisco and continued to work there until 1977. For the 10-year period beginning with 1968 and ending in 1977 with respect to which we have information concerning *380 his employment, the petitioner spent very little time working near Arcadia. These circumstances also support our conclusion that while the petitioner was in Missouri in 1974, he was not away from home for tax purposes. See Eaves v. Commissioner,33 T.C. 938 (1960); Claunch v. Commissioner,29 T.C. 1047 (1958), affd. 264 F. 2d 309 (5th Cir. 1959); compare Rosenspan v. United States,438 F.2d 905 (2d Cir. 1971), cert. denied 404 U.S. 864 (1971); Bochner v. Commissioner,67 T.C. 824 (1977); Deneke v. Commissioner,42 T.C. 981 (1964).
The only "temporary" aspect about the petitioner's job was his own efforts to find employment elsewhere. Yet, his own actions do not detract from the fact that the job itself was indefinite. His employer treated the job as indefinite; it did not give him a per diem allowance, nor did it reimburse him for his living expenses while he was in Crystal City. The petitioner had no reason to expect to be transferred from the job in Missouri, and the time period for which he was employed was not limited by the terms of a written contract. Owens v. Commissioner,50 T.C. 577, 582 (1968). *381 He was not subject to the threat of layoff because of lack of union membership, a factor we have previously considered in determining the nature of a taxpayer's employment. The petitioner was fortunate enough to be assured a steady job with Bechtel. The termination of his employment with Bechtel was entirely voluntary and a matter of personal choice. The petitioner conceded that "I voluntarily left Bechtel and--and went to--with Fruin-Colnon." While we understand the petitioner's reasons for not wanting his wife to leave her teaching job in Arcadia and thereby forfeit her retirement benefits, this Court has often held that if members of a family engage in nontemporary employment in different localities, then the locality in which each member works becomes his home for tax purposes. Foote v. Commissioner,67 T.C. 1 (1976); Tucker v. Commissioner,55 T.C. at 788; Kroll v. Commissioner,49 T.C. at 565. As this Court stated in Tucker v. Commissioner,55 T.C. at 787: By any reasonable standard, the prospects of employment in that area must have seemed bleak, or at best, unpromising; yet, the petitioner chose to keep *382 his family residence there for reasons of personal choice that were despite, rather than because of, the exigencies of his trade or business. [Emphasis in original.] In view of our conclusion that the petitioner was not away from home in 1974 for tax purposes, it is unnecessary for us to deal with the Commissioner's alternative argument that the petitioner's expenditures for trips to Los Angeles to visit his family, for gardening services, and for pool maintenance are not deductible in any event. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. Sec. 262 provides: Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
3. Sec. 162(a)(2) provides: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩