JAMES F. MUHL and BOBBIE L. MUHL, Petitioners v. COMMISSIONER OF INTERNAL, Respondent
Muhl v. Commissioner
Docket No. 3580-84.
United States Tax Court
T.C. Memo 1986-309; 1986 Tax Ct. Memo LEXIS 296; 51 T.C.M. (CCH) 1538; T.C.M. (RIA) 86309; July 24, 1986. *296 During 1979 and 1980, P operated a farm near Waco, Tex., and spent the weekends there. During the week, he worked as an electrician near Houston, Tex., and derived his principal income from that work. Held: (1) P's employment in the Houston area was temporary until July 1980 so that his travel expenses incurred before that time are deductible, but thereafter, his employment became indefinite. (2) P's transportation expenses between the Houston area and Waco are deductible as ordinary and necessary business expenses since P had a place of business in each area. Donald C. McLeaish, for the petitioners. Marty J. Raisanen, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in the petitioners' Federal income taxes of $2,613.49 for 1979 and $3,315.11 for 1980. The issues remaining for decision are whether Mr. Muhl's traveling expenses were incurred while away from home and deductible under section 162(a)(2) of the Internal Revenue Code of 1954, [1] and whether his transportation expenses between the Houston area and Waco are ordinary and necessary business expenses rather than personal expenses. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, James F. Muhl and Bobbie L. Muhl, maintained their legal residence in Waco, Tex., at the time of filing their petition in this case. They filed their joint Federal income tax returns for 1979 and 1980 with the Internal Revenue Service Center, *298 Austin, Tex. Mr. Muhl will sometimes be referred to as the petitioner. In 1945, Mr. and Mrs. Muhl purchased 28 acres in Waco, Tex., and began operating a dairy farm. In 1955, they sold this property and moved their dairy farm to their present location where they purchased 256 acres for $80 per acre. In 1957, the petitioners were forced to sell much of their dairy cattle because of a severe drought; thereafter, they began raising feed cattle. Since the only water available at that time was stored in cisterns, which were inadequate for the farm's needs, the petitioners sought an alternative. Mr. Muhl went to the Farmers Home Administration and was instrumental in obtaining a loan in 1958 for an artesian well which would supply water to the petitioners' farm and the surrounding area. As a result, H & H Water Supply Corporation was organized. At first, the petitioners volunteered their time: they read meters, and Mr. Muhl was the secretary and treasurer. Eventually, Mrs. Muhl became a paid employee. As a board member of the water company, Mr. Muhl was required to attend meetings once a month, and he also engaged in electrical work for it; in 1980, he earned $2,100 for maintenance *299 of the electrical pumps for the water system. The petitioners' principal reason for purchasing the property was to operate it as a farm, but over the years, they developed a business of constructing houses on parcels of the property and selling them. During 1965, the petitioners sold a parcel of 22 acres with a three bedroom, two bath house for $17,000 and a parcel of 11 acres for $2,750. In 1974, they sold a parcel of 7 acres with a house for $17,500. In 1975, the petitioners bought 11 acres for $12,500. In 1976, they sold 20 acres for $14,000. During 1977, the petitioners sold 15 acres with a four bedroom, two bath house for $49,000 and made a gift of several acres to one of their daughters. Since 1940, the petitioner has also worked as an electrician. He is a member of the International Brotherhood of Electrical Workers. Since he could not find work as an electrician in Waco, the petitioner moved his union local card in 1977 from Waco to Houston to get his name in the "first book" and increase his chances of obtaining job assignments in the Houston area. He continued to maintain a travelers card at the Waco local in order to remain eligible for assignments in the Waco *300 area. One week after having transferred his card to the Houston local, the petitioner obtained work in the Houston area. In November 1977, the petitioner left that project to accept an assignment at Tom Cuff Electric in Waco, and he remained there until the completion of the job in February 1979. At that time, the petitioner again attempted to find work as an electrician in Waco but was unsuccessful. On March 7, 1979, the petitioner accepted employment with Ebasco Services, Inc. (Ebasco), on a project for construction of Unit No. 7 for Houston Power and Light. The project was near Rosenburg, Tex., 40 miles from Houston and approximately 200 miles from Waco. At the time he commenced work on the project, the petitioner, who was then approximately 61 years of age, was told that Unit No. 7 was scheduled to be completed in 15 to 18 months. The petitioner was laid off for a 1-week period in June 1980 because of a labor dispute between Houston Power and Light and the local union. In March 1980, actual construction of Unit No. 8, adjacent to Unit No. 7, was begun by Ebasco; and on July 16, 1980, upon completion of Unit No. 7, the petitioner was transferred to Unit No. 8, which was *301 scheduled to be completed in February 1983. On May 9, 1981, the petitioner voluntarily left the Ebasco project and accepted a 6-month assignment at a different project, which was approximately 45 miles outside of Houston, and slightly closer to Waco, and at which he worked a 4-day week. Later, he accepted a 2-week assignment with Shea & Shea in Houston. On November 30, 1981, he returned to the Ebasco project and remained there until the electrical work was completed in December 1982. On their Federal income tax returns, the petitioners reported that Mr. Muhl received wages from Ebasco of $27,950.20 for 1979 and $34,094.35 for 1980. They deducted as traveling expenses $7,552 for 1979 and $6,193 for 1980. These deductions included the costs of meals and lodging while Mr. Muhl worked in the Houston area and the costs of his driving to and from Waco each week. The petitioners also deducted as losses from the operation of their farm $5,875.00 in 1979 and $5,186.00 in 1980. In this notice of deficiency, the Commissioner disallowed the deductions for traveling expenses on the ground that Mr. Muhl's employment with Ebasco was indefinite rather than temporary. He also disallowed the *302 farm losses on the ground that the farm was not operated for profit. The parties now agree that if the petitioners are entitled to deduct traveling expenses, the amounts of such expenses are $7,072.72 for 1979 and $6,193.00 for 1980. The Commissioner now agrees that the farm was operated for profit, and the parties have agreed that the allowable losses are $1,143.00 for 1979 and $1,363.61 for 1980. OPINION Personal, living expenses are ordinarily nondeductible. Sec. 262. However, section 162(a)(2) allows a taxpayer to deduct certain living expenses paid or incurred while away from home in the pursuit of a trade or business, if (1) the expenses are reasonable and necessary, (2) they are incurred while away from home, and (2) they are incurred in the pursuit of business. Commissioner v. Flowers,326 U.S. 465, 470 (1946). The purpose of the deduction under section 162(a)(2) is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner,49 T.C. 557, 562 (1968); James v. United States,176 F. Supp. 270, 272 (D. Nev. 1959), *303 affd. 308 F.2d 204 (9th Cir. 1962). Since the amount of the traveling expenses incurred by the petitioner is not in dispute, the deductibility of such expenses depends upon whether the petitioner was "away from home" within the meaning of section 1262(a)(2). When a taxpayer with a well established tax home accepts employment away from his home, his living expenses are deductible if such employment is temporary or of short duration because it would not be reasonable to expect him to move his home under such circumstances. Commissioner v. Peurifoy,254 F.2d 483, 486 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958); Tucker v. Commissioner,55 T.C. 783, 786 (1971); Michaels v. Commissioner,53 T.C. 269 (1969). However, if the taxpayer travels for a period expected to be indefinite, his expenses are not deductible; in that event, the law considers that he should move his home to the new place of employment and that his traveling from his former home is not required by his business but by his personal choice to continue to live there. Commissioner v. Flowers,supra. *304 Temporary employment is generally defined as the kind of employment whose termination can be foreseen within a fixed or short period of time. Albert v. Commissioner,13 T.C. 129, 131 (1949). In addition to the expected length of employment, all the facts and circumstances must be considered in deciding whether the petitioner should be expected to move his home from Waco to Houston for tax purposes. Tucker v. Commissioner,55 T.C. at 786; Albert v. Commissioner,supra.It is a well settled principle that employment which is originally temporary may become indefinite or permanent due to changed circumstances or simply by the passage of time. Norwood v. Commissioner,66 T.C. 467, 470 (1976); Kroll v. Commissioner,49 T.C. at 562; Carlock v. Commissioner,34 T.C. 611, 616 (1960). By indefinite employment, we mean that employment with respect to which the actual termination date cannot be anticipated but which is expected to last for longer than a temporary period. See Blatnick v. Commissioner,56 T.C. 1344 (1971). No single element is determinative of the *305 ultimate factual issue of temporariness, and there are no rules of thumb, duration or otherwise. Each case turns on its own facts. Peurifoy v. Commissioner,358 U.S. 59, 60-61 (1958). The petitioner maintains that his employment with Ebasco in the Houston area was temporary because he contemplated, understood, and intended when accepting the job that he would remain away from his permanent home for only a short period of time. It is true that initially he expected this assignment to last approximately 15 to 18 months; in fact, it lasted 16 months. There was no indication that this first job with Ebasco would result in his receiving further employment on the same project. Therefore, his employment with Ebasco was temporary in contemplation at the time of its acceptance. This tempoary nature persisted while he remained on his initial assignment. However, in July 1980, his situation changed significantly.Rather than being terminated upon completion of the Unit No. 7, the petitioner was transferred to Unit No. 8. At that time, he knew that the Ebasco project needed his services and was willing to have him continue in its employ. After accepting the job on Unit *306 No. 8, the petitioner knew that he would be able to continue working for Ebasco through the anticipated February 1983 completion date. The fact that the petitioner voluntarily left the Ebasco project on May 9, 1981, until November 30, 1981, is of no consequence. During that interval, he accepted two other assignments in the Houston area and both through the Houston local. At all times from May 1981 until December 1981, the Ebasco project continued, and the petitioner chose to work elsewhere in the Houston area. These personal preferences for job assignments in and around Houston do not affect our conclusion that the location of his "tax home" was in Houston. The petitioner contends that, during 1979 and 1980, Waco remained his principal place of employment since he maintained the requisite business ties there while he was "temporarily" employed in the Houston area. In addition, he would have preferred to work as an electrician near his home in Waco and intended to live there near his family upon his retirement. However, the facts are that beginning in 1979, he could not find satisfactory employment as an electrician in Waco, and despite his preference for work in Waco, he *307 spent a total of more than 3-1/2 years continuously working in the Houston area, including approximately 37 months working on the Ebasco project. The substantial duration of his employment, and the fact that he derived his principal income from that employment are persuasive reasons for concluding that his employment was indeterminate as it developed; consequently, he could not continue to treat Waco as his tax home. Norwood v. Commissioner,supra;Smith v. Commissioner,33 T.C. 1059, 1062 (1960); Eaves v. Commissioner,33 T.C. 938, 942 (1960). Under these circumstances, we hold that the petitioner is entitled to deduct traveling expenses incurred up to July 16, 1980, when his employment in the Houston area became indefinite, and not thereafter. Norwood v. Commissioner,66 T.C. at 471. There remains the issue of whether the petitioner is entitled to deduct his automobile expenses for his trips between the Houston area and Waco. It has long been held that the expenses incurred in commuting between one's home and place of business are personal and nondeductible. Commissioner v. Flowers,326 U.S. 465, 473-474 (1946); *308 Heuer v. Commissioner,32 T.C. 947, 951-952 (1959), affd. 283 F.2d 865 (5th Cir. 1960). However, where there are two or more established places of business, all costs of transportation between them are ordinary and necessary business expenses. Steinhort v. Commissioner,335 F.2d 496, 504 (5th Cir. 1964); Heuer v. Commissioner,supra at 951-953; Kistler v. Commissioner, 40 I.C. 657, 665 (1963). In the present case, it is the petitioner's contention that, because of the activities he carried on at his farm, his home was a place of business. The question is one of determining whether the primary purpose served by the travel was to return "home" in the popular sense of the word or whether the resemblance is more to that of travel between different business locations. Curphey v. Commissioner,73 T.C. 766 (1980); Green v. Commissioner,59 T.C. 456 (1972); Mazzotta v. Commissioner,57 T.C. 427 (1971), affd. per curiam 465 F.2d 1399 (2d Cir. 1972). The Commissioner has allowed the petitioners' deductions for farm losses; thus, he has conceded that the *309 farming activity was engaged in for profit. Furthermore, while he was at Waco, the petitioner was engaged in his land development activity and performed some services for the water company. Therefore, we hold that although Waco was his home, the petitioner's trips to it were primarily to carry on his business activities there, and hence, his transportation expenses are deductible as ordinary and necessary business expenses. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩