RAYMOND C. AND PATRICIA A. WILSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson v. Commissioner
Docket No. 2079-88.
United States Tax Court
T.C. Memo 1989-109; 1989 Tax Ct. Memo LEXIS 109; 56 T.C.M. (CCH) 1478; T.C.M. (RIA) 89109; March 20, 1989. Raymond C. Wilson, pro se. Raymond M. Boulanger, for the respondent. GALLOWAY
MEMORANDUM FINDINGS OF FACT AND OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, and Rule 180 *110 et seq. [1]
Respondent determined a deficiency of $ 2,827 in petitioners' 1984 Federal income tax. The sole issue for decision is whether petitioners' 1984 unreimbursed meals, lodging and other expenses were incurred while Raymond C. Wilson (petitioner) was engaged in temporary rather than indefinite employment in the taxable year 1984. Some of the facts are stipulated and are so found. Petitioner was a resident of Addison, New York, at the time of filing his petition. FINDINGS OF FACT Petitioner has lived in Addison, New York, for 15 years. He is a tradesman with considerable expertise in pipefitting, welding and plumbing. For example, petitioner can weld with both hands, which allows him to work in some confined areas which would otherwise require two workers. Petitioner is a member of Local #109 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States (The Union), which is now part of Local #267 in *111 Syracuse, New York. In early 1983, petitioner became concerned about the paucity of employment in his local work area. Many tradesmen had seniority over petitioner in securing work assignments for the jobs available. Accordingly, petitioner accepted an assignment by his Union agent in January to work through Georgia Local 150 at the Vogle Nuclear Power Plant in Waynesboro, Georgia, 35 miles south of Augusta and over 800 miles from petitioner's home. Petitioner was not advised of the length of this work assignment. He pulled his travel trailer to Georgia to minimize living costs. After reporting for work, petitioner was laid off after four hours' work. He returned to New York and was thereafter assigned by the Union to work at several short-term jobs located in Oswego and Ithaca, New York, Salem, New Jersey, and Berwick, Pennsylvania. Except for Ithaca, petitioner was required to be away from home overnight on these work assignments. On December 23, 1983, due to lack of work in the Middle Atlantic State area, petitioner accepted an estimated five week job assignment in Waynesboro, Georgia, in response to a Union request for tradesmen with petitioner's expertise made by the *112 Pullman Power Products corp. (Pullman) of Williamsport, Pennsylvania. Petitioner departed for Georgia on December 23, 1983, pulling his travel trailer and found accommodations in a trailer park in Georgia. Petitioner's work assignment ended in February 1984. Unlike his 4 hour work assignment in Georgia in January 1983, petitioner was successful in securing additional work assignments in Pullman's six square mile "home area" of construction activity. When construction work was low in petitioner's "home area" he made himself available to Pullman foremen at other job sites in the six square mile area where his expertise was needed. To secure petitioner's services, the foremen frequently eliminated job description requirements set forth in the Union assignment of non-local union workers such as petitioner. The job efficiency of Pullman foremen increased because of their opportunity to employ tradesmen such as petitioner equipped with specialized skills. He secured several work assignments through Pullman foremen in the "home area" until July 1984, when petitioner returned to New York seeking work. Petitioner found few job assignments available and many tradesmen senior to him *113 seeking these jobs. Therefore, since no work was available, petitioner returned to the job site in Waynesboro, Georgia, after 7-10 days in New York. Again, he made his expertise and availability known to various Pullman foremen and was able to obtain several short-term jobs, the last of which terminated in November 1984. Petitioner returned home for the second time in 1984, hoping to find work in the Oswego, New York, area, about 130 miles from his home. Petitioner was unsuccessful. Openings for tradesmen with his expertise were few and there were numerous skilled tradesmen with seniority seeking jobs. Petitioner again returned to Waynesboro, Georgia, and continued to seek work assignments in the six square mile area through his continuing contacts with Pullman foremen. During his 49 weeks in Waynesboro, Georgia, in 1984, petitioner obtained eight additional job assignments following the initial Union assignment terminating in February 1984. Petitioner preferred his foreman contact method of seeking jobs, rather than being laid off after each work assignment terminated and then waiting for assignment to another job by the local Georgia union. Petitioner continued to work *114 at short-term assignments in Georgia until he returned home in October 1985. His New York Union had located a demand for tradesmen with petitioner's pipefitting and welding expertise, with a Buffalo, New York, contractor at a job assignment in Watkins Glen, New York, about 40 miles from petitioner's home. During petitioner's absence, his mother, who lived in Bath, New York, picked up his mail and paid petitioner's bills for utilities, telephone, property taxes, and other current expenses. Petitioner's neighbor maintained petitioner's yard in his absence as petitioner had done for the neighbor on previous occasions when petitioner was home and the neighbor absent. OPINION Respondent's determination of tax in the notice of deficiency is presumed correct. Petitioner has the burden of proving he is entitled to the travel, meals and lodging expense incurred while away from home. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Personal living expenses are generally nondeductible. Section 262. However, a taxpayer may deduct certain living expenses paid or incurred while away from home if they are reasonable and necessary, and incurred while away from *115 home and in the pursuit of a trade or business. Section 162(a)(2). Commissioner v. Flowers,326 U.S. 465, 470 (1946). The purpose of the deduction under section 162(a)(2) is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner,49 T.C. 557, 562 (1968). Since the amount of the traveling expenses incurred by the petitioner is not in dispute, the deductibility of such expenses depends upon whether the petitioner was "away from home" within the meaning of section 162(a)(2). When a taxpayer with a well-established tax home accepts employment away from his home, his living expenses are deductible if such employment is temporary or of short duration because it would not be reasonable to expect him to move his home under such circumstances. Commissioner v. Peurifoy,254 F.2d 483, 486 (4th Cir. 1957), affd. per curiam 358 U.S. 59 (1958); Six v. United States,450 F.2d 66, 69 (2d Cir. 1971); Tucker v. Commissioner,55 T.C. 783, 786 (1971). *116 However, if the taxpayer incurs traveling expenses for a period expected to be indefinite, his expenses are not deductible; in that event, the law considers that he should move his home to the new place of employment and that his traveling from his former home is not required by his business but by his personal choice to continue to live there. Commissioner v. Flowers, supra.
Temporary employment is generally defined as the kind of employment whose termination can be foreseen within a fixed or short period of time. Albert v. Commissioner,13 T.C. 129, 131 (1949). In addition to the expected length of employment, all the facts and circumstances must be considered in deciding whether petitioner should be expected to move his home from Addison, New York, to Waynesboro, Georgia, for tax purposes. Tucker v. Commissioner,55 T.C. at 786. It is well settled that employment which is originally temporary may become indefinite because of changed circumstances or simply by the passage of time. Norwood v. Commissioner,66 T.C. 467, 470 (1976). In this case, petitioner maintains that his employment with Pullman at Waynesboro, *117 Georgia, was temporary all during 1984 since his home work assignments at that location constituted a series of temporary work assignments. Respondent concedes that petitioner's first work assignment in Georgia, ending in February was temporary, but argues that "after termination of this initial period, (petitioner's) situation changed significantly." We do not agree. In January 1983, petitioner traveled to Waynesboro, Georgia, on a work assignment only to have it terminate after four hours. He again traveled to Waynesboro in December 1983 on a work assignment which terminated after 5-6 weeks. Although petitioner continued to work at Waynesboro for the same employer in 1984 at 8 other short-term assignments in various parts of the 6 square mile work area, these assignments were all of short duration, averaging 5-1/2 weeks each. Moreover, the fact that petitioner maintained his status as a Pullman employee in 1984 was due more to petitioner's selling his expertise to individual Pullman foremen who had need for petitioner's specialized skills at various worksites rather than any concerted plan of Pullman to continue his services as a valuable employee for an indefinite period of *118 time. In fact, the availability of work which petitioner could perform for Pullman at Waynesboro decreased starting in early 1985. Petitioner returned home to New York in October 1985, to avoid unemployment. Respondent cites Ham v. United States,408 F.2d 671 (6th Cir. 1969) as authority for the disallowance to a pipefitter of expenses of travel and living costs on various jobs. In Ham v. United States, however, the taxpayer, who had worked as an employee in Cincinnati, Ohio, for his contractor employer had been originally sent by the employer to Lexington, Kentucky, on a temporary assignment for a year, only to continue to work on other construction jobs for the employer for a total of approximately 4 years. Here, petitioner worked for Pullman in Georgia for 49 weeks in 1984. Under the circumstances of this case, we find that petitioner's nine short-term work assignments for Pullman in 1984 constitute temporary rather than indefinite employment, during the year 1984. See Muhl v. Commissioner,T.C. Memo. 1986-309, where we held that an initial work assignment of an electrician was temporary when it continued for a period of 16 months. *119 Decision will be entered for the petitioners.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩